UNITED STATES of America,
Plaintiff-Appellee,

v.

Ronald Dwight POSEY,
Defendant-Appellant.

No. 80–2002.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 24, 1981.

Decided Oct. 21, 1981.

Rehearing Denied Nov. 17, 1981.
Certiorari Denied Feb. 22, 1982.
See 102 S.Ct. 1473.

Edward B. Arnolds, The John Marshall Law School, Chicago, Ill., for defendant-appellant.

Bernard L. Pylitt, Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge, and MAROVITZ,[*] Senior District Judge.

MAROVITZ, Senior District Judge.

Defendant Ronald Posey brings this appeal seeking to overturn his conviction of bank robbery, 18 U.S.C. § 2113(d), and conspiracy to commit bank robbery. 18 U.S.C. § 371. The only issues raised by Posey on appeal are fourth amendment issues concerning the search and seizure of an automobile while being driven by Posey that produced a chrome-plated .32 caliber revolver used in the bank robbery. For the reasons set forth below, we affirm Posey's convictions.

I

Posey's convictions stem from the October 12, 1979 robbery of the Hatfield, Indiana branch of the Dale State Bank. The Hatfield bank was robbed during business hours by four men wearing Halloween masks. One of the men was armed with a rifle and another was armed with a semiautomatic revolver. Witnesses to the robbery were unable to provide a detailed description of any of the robbers. The robbery took about four minutes and netted $64,281.00.

About three months later, on the Wednesday afternoon of January 16, 1980, Posey and a male companion were observed by Chief of Police Terry Graham of Steele, Alabama while Posey was driving a white Ford automobile several times past a bank in Steele. According to Chief Graham, Posey and his companion were observing both the bank and himself in a "suspicious manner." There were other businesses in the vicinity of the Steele bank, all of which were customarily closed on Wednesday afternoons. The Steele bank had been recently robbed. After Posey drove away from the vicinity of the bank, Chief Graham issued a radio bulletin to all law enforcement officers in the St. Claire County, Alabama area providing a description of the Ford automobile and instructing anyone spotting the automobile to "check . . . [the passengers] . . . out and see what they were up to." Tr. 132.

Approximately fifteen minutes later, Posey was stopped about fifteen miles outside of Steele by the Springville, Alabama Assistant Chief of Police. The Springville officer asked Posey what he had been doing in Steele, and Posey replied that he was looking for a drugstore in which he could purchase medicine for a toothache his companion was suffering from. The Springville officer then contacted Chief Graham while detaining Posey for approximately twenty minutes until Chief Graham arrived. When Chief Graham arrived, he searched

[*] The Honorable Abraham L. Marovitz, Senior District Judge of the Northern District of Illinois, is sitting by designation.

the automobile. During the search, Posey and his companion stood outside and to the rear of the automobile. The .32 caliber revolver used in the Hatfield bank robbery was found under the driver's seat, another revolver was found under the passenger's front seat, and other guns were found in the trunk.

Posey was operating the automobile without a valid driver's license in his possession. Posey informed the officers that the automobile was registered in the name of his wife, Mrs. Linda Posey. Further, Posey told the officers that his wife possessed valid permits for the guns found in the car.

Certain other facts surrounding the search of the automobile are disputed or unclear from the record. It is disputed whether Posey was asked to produce a driver's license before or after the search. Chief Graham testified that the Springville officer was issuing Posey a traffic citation for driving without a license when he arrived at the scene of the stop. Posey's testimony, on the other hand, is inconsistent as to whether he was asked to produce a driver's license before or after the search. It is also disputed as to whether the search was consented to by Posey. Finally, the record is unclear as to whether Posey's traffic arrest caused him to be placed in a custodial arrest. Chief Graham testified that it was common procedure in St. Claire County to place a nonresident in custodial arrest for a traffic violation if he were unable to post a bond, and that Posey had insufficient money on his person to post bond. The citation, however, was for an appearance at a later date, and Posey testified that he was never asked to post a bond.

Posey, Jerry Sanders, Roy Flowers, and Henry Wade were ultimately indicted for the Hatfield bank robbery. Prior to his trial, Posey sought to suppress the fruits of the January 16, 1980 search of his wife's automobile. The district court ruled that Posey's behavior in the vicinity of the Steele bank constituted reasonable grounds for the stop. The district court further ruled that the search of the automobile was not consented to, but that the traffic arrest justified the search under the front seat of the automobile. As to the search of the trunk, the district court, reasoning that the search was not custodial, found the search unreasonable. Thus, Posey's motion to suppress was denied as to the .32 caliber revolver and the other revolver found under the front seat and granted as to the guns found in the trunk.

At Posey's trial, Sanders and Wade testified as government witnesses pursuant to plea agreements.[1] Sanders testified that the Hatfield bank robbery was committed by Posey, Wade, Flowers, and himself, although Sanders admitted that he initially informed police investigators that Jimmy Drysdale, not Posey, was the fourth robbery participant. Sanders testified at trial that the Hatfield bank robbery was originally planned by Flowers, Wade, Drysdale, and himself, but that Drysdale disappeared and was replaced by Posey some time before the robbery. As to Posey's participation in the planning of the robbery, Sanders testified, *inter alia*, that Posey, Flowers, Wade, and himself met in the Busy Body Lounge in Evansville, Indiana on October 10, 1979 to discuss the robbery. Sanders testified that while at the lounge the four men were for a short time joined by Ms. Wilma Byrne, an employee of the lounge. Further, Sanders testified that on October 11, 1979 the four men went to a department store and purchased the clothing worn during the robbery and that he and Wade purchased an automobile used in the robbery.

Sanders's testimony describes in detail the robbery itself, including the clothing each participant wore. Sanders testified that he was armed with a .32 caliber chrome-plated revolver and that Posey was armed with a .30–30 rifle. Sanders identified the .32 caliber revolver obtained in the January 16, 1980 search as the same one used by him in the robbery and stated that he had been given the revolver by Posey. Chief Graham testified, over Posey's objection, to the details of the January 16, 1980 search that produced the revolver.

1. At the time of Posey's trial, Flowers remained a fugitive from justice.

Wade's testimony was consistent with Sanders's testimony in every respect. Sanders's and Wade's testimony as to the clothing worn by the men and their positioning while in the bank was corroborated by bank photographs.

Mrs. Byrne also testified for the government. She corroborated Sanders's and Wade's testimony as to their October 11, 1979 meeting at the Busy Body Lounge with two other men, positively identifying Posey as one of the two men with Sanders and Wade. A government agent testified that prior to trial Byrne identified Posey from a photographic line-up.

To rebut Sanders's testimony, Posey testified that Sanders and he had had a quarrel while in prison and that Sanders had vowed to "get even" with Posey. Posey's testimony in this regard was supported by the testimony of several other witnesses.

Posey also presented an alibi defense at trial, asserting that he was in Cullman, Alabama on the day of the Hatfield bank robbery. Mrs. Linda Posey, Mrs. Edna Posey, the defendant's mother, Verna Baker, the defendant's mother-in-law, and James Allen, a friend of the Poseys and former husband of one of Linda Posey's sisters, all testified that Posey was in Cullman, Alabama on October 11, 1979. Linda Posey further testified that the .32 caliber revolver belonged to her and that she usually kept the revolver under the front seat of her yellow Lincoln automobile. She testified that her husband loaned the Lincoln automobile to Wade sometime in October 1979.

The government produced a series of witnesses rebutting Posey's alibi. Mrs. Baker was called by the government and testified that her previous testimony on Posey's behalf had been incorrect both insofar as she testified that she had not seen the Poseys in possession of a large sum of money shortly after October 12, 1979 and insofar as she testified that she had not heard Mrs. Linda

Posey warn anyone not to provide testimony contrary to Posey's alibi defense. When called by the government, Mrs. Baker testified that she did observe the Poseys in possession of a large sum of money shortly after the robbery. Also, Mrs. Baker testified that she heard Mrs. Linda Posey threaten Mrs. Baker's daughter Brenda not to testify against Posey at his trial. Rhonda Barbee, Linda Posey's sister, testified that Linda Posey had told her that she had better provide testimony in support of Posey's alibi testimony and that if anyone supplied testimony contrary to Posey's alibi they would be killed. Ms. Barbee stated she could not recall if Posey was in Cullman, Alabama on the day of the robbery. Mr. J. C. Laningham was called by the government and testified that Linda Posey approached him prior to trial and suggested that he fabricate testimony supportive of Posey's alibi.

After deliberating for approximately three hours, the jury returned a verdict of guilty on both counts of the government's indictment against Posey. Posey was subsequently sentenced by the district court to twenty years on the robbery count and five years on the conspiracy count, the sentences to run concurrently.

## II

### A

■ The first issue we address is whether Posey has "standing" to challenge the January 16, 1980 search on fourth amendment grounds. The government asserts that because Posey admittedly had no property interest in either the automobile searched or the guns seized, he may not challenge the search and seizure. This "standing" question need not long detain us. Whether an individual's fourth amendment rights are implicated by a government search or seizure turns upon the individual's legitimate expectations of privacy,[2] rather

---

2. The Supreme Court has recently indicated that what are generally characterized as fourth amendment "standing" questions involve principles not of standing law, but substantive fourth amendment law. *Rakas v. Illinois*, 439 U.S. 128, 139–40, 99 S.Ct. 421, 428–29, 58 L.Ed.2d 387 (1979). More specifically, whether one has a legitimate expectation of privacy from government intrusion is, strictly speaking, a question not of standing, but substantive fourth amendment law. *Id.*

than principles of common law property law. *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). The fact that Posey owned neither the Ford automobile nor the guns is indeed relevant to the inquiry of whether he had a legitimate expectation of privacy. *See id.* at 91, 100 S.Ct. at 2553. However, Posey plainly had an expectation of privacy in an automobile owned by his wife and over which he was exercising exclusive control pursuant to her permission at the time of the search. *See Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978). Therefore, we find that the search and seizure challenged by Posey implicates his fourth amendment rights.

**B**

■ It is well-settled that even a brief stop of an automobile by a police officer constitutes a "seizure" within the meaning of the fourth amendment. *E. g., Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). Searches and seizures that implicate fourth amendment rights must be accompanied by probable cause and a warrant absent the applicability of some well-defined exception. *New York v. Belton*, ── U.S. ──, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). It is undisputed that the stop of the automobile driven by Posey was not accompanied by probable cause. The government contends that the stop of Posey was justified under the probable cause exception carved out by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967), and its progeny. *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). We disagree. *Terry* authorized a brief investigative stop without probable cause upon the basis of a reasonable, articulable belief that an individual is involved in criminal activity. *Terry*'s recognition of an exception to the fourth amendment's probable cause requirement reflects a balancing of the public's interest in crime detection and the individual's privacy interest. *E. g., Brown v. Texas*, 433 U.S. at 50, 99 S.Ct. at 2640. Because the privacy intrusion occasioned by a brief investigatory stop is minimal, a stop based upon a reasonable, articulable suspicion of criminal activity is permissible. *E. g., Adams v. Williams*, 407 U.S. at 146, 92 S.Ct. at 1923. When, however, a stop based on less than a reasonable, articulable suspicion of criminal activity is weighed against an individual's privacy interest, the individual's privacy interest must be viewed as paramount. *Brown v. Texas*, 443 U.S. at 51–52, 99 S.Ct. at 2640; *Delaware v. Prouse*, 440 U.S. at 663, 99 S.Ct. at 1401.

Chief Graham's testimony does not persuasively indicate what in his experience as a police officer would cause him to *reasonably* suspect, based upon Posey's conduct in the vicinity of the Steele bank, that criminal activity was afoot. *See, e. g., Brown v. Texas*, 443 U.S. at 52 n.2, 99 S.Ct. at 2641 n.2. Chief Graham's observations did not lead him to take the "necessarily swift action" authorized by *Terry*. *Terry v. Ohio*, 392 U.S. at 20, 88 S.Ct. at 1879. Even assuming *arguendo* that Posey's conduct in Steele constituted justification for a *Terry* stop, that justification had evaporated by the time of the stop. Presumably, the criminal activity of which Posey was suspected by Chief Graham was preparing to rob the Steele bank. Once Posey was fifteen miles outside of Steele traveling away from that town it can not fairly be contended that Posey's conduct gave rise to a reasonable suspicion that a crime had been committed or was about to be committed. Accordingly, we conclude that the stop of Posey was violative of his fourth amendment rights and furthermore that the subsequent introduction of the .32 caliber revolver constituted constitutional error.

**C**

■■ A conviction tainted by constitutional error must be reversed unless the error is harmless. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d

705 (1967). To find constitutional error harmless, a reviewing court "must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* In view of this standard, a conviction secured pursuant to constitutional error will seldom be deemed harmless. *See id.* at 23–24, 87 S.Ct. at 827–828. Our careful and probing review of the record in the instant case, however, leads us to confidently conclude that the use of the .32 caliber revolver against Posey constituted harmless error. The evidence admitted at Posey's trial linking him to the Hatfield bank robbery apart from the .32 caliber revolver was convincing and overwhelming. The use of the .32 caliber revolver was of inconsequential value to the government's case.

Sanders's and Wade's testimony implicating Posey was consistent in every respect. While Posey attempts to make much of the fact that Sanders had vowed to "get even" with Posey, no similar motive is attributable to Wade's testimony. Sanders's and Wade's testimony with regard to Posey's participation in the planning of the robbery is corroborated by the testimony of Ms. Byrne. Moreover, Posey's alibi defense was effectively rendered incredible by the government's evidence offered in rebuttal of that defense.

Among the incriminating evidence admitted at Posey's trial, the fact that the .32 caliber revolver used by Sanders was subsequently found in Posey's possession was a minor piece of evidence linking Posey to the commission of the bank robbery. In the absence of the use of the .32 caliber revolver, the government's case against Posey would not have been weakened appreciably. In short, in view of the overwhelming nature of all of the other evidence admitted against Posey coupled with the inconsequential nature of the tainted evidence, we conclude beyond a reasonable doubt that the tainted evidence did not contribute to Posey's conviction. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d

705. Therefore, the district court's judgment of conviction is

Affirmed.

CUDAHY, Circuit Judge, dissenting:

Judge Marovitz has written a persuasive and, I think, fair opinion. Nonetheless, given the unfortunate fact that the handgun (the only piece of physical evidence) must be suppressed, I cannot conclude beyond a reasonable doubt that without the gun the jury would have convicted Posey.

I therefore respectfully dissent.