429 So.2d 445 (1983)
STATE of Louisiana
v.
Eeves J. PHIPPS.
No. 82-AW-2516.
Supreme Court of Louisiana.
April 4, 1983.
Alvin J. Dupre, Jr., New Orleans, for relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., William C. Credo, III, Kerry C. Hogan, Asst. Dist. Attys., for respondents.
LEMMON, Justice.
This case comes before the court on review of a conviction of possession of marijuana.[1] After the trial court denied defendant's motion to suppress the marijuana discovered in an allegedly illegal search, defendant entered a conditional plea of guilty, reserving the right to seek review of the denial of his pretrial motion. State v. Crosby, 338 So.2d 584 (La.1976). On defendant's application, we granted certiorari to determine whether the police officer's investigatory detention of defendant and his companions complied with the guidelines of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), for a forceful stop restraining a person's freedom to leave. 422 So.2d 427.
At about 1:00 a.m. on the Sunday before Mardi Gras, a deputy sheriff noticed four young men walking through a parking lot heading toward a public street. Suspicious of their nocturnal activities, the deputy ordered the young men to stop. As a precautionary safety measure, he also ordered them to place their hands on the parked car *446 and to empty their pockets.[2] When defendant emptied his pocket, he pulled out a plastic bag containing marijuana. The deputy then arrested defendant and charged him with possession of a controlled dangerous substance.
In Terry v. Ohio, above, an experienced police officer observed two men on a street corner. The officer watched them take turns walking in front of a store, peering into the window, walking a short distance before turning around and then walking back toward the corner, again stopping to peer into the store on the return trip. The two men conferred with each other numerous times and occasionally with a third person. After seeing the men behave in this manner for 10 minutes, the officer, justifiably suspicious that the men were planning a crime, interrupted their conversation, identified himself, and asked for their names. He then frisked the men and discovered loaded revolvers on two of them.
The United States Supreme Court, noting that the officer would have been remiss in his duty if he had not investigated the extremely suspicious activity that he observed, approved the stop and frisk procedure utilized by the officer as reasonable. The Court held that the articulable and suspicious circumstances provided reasonable cause for the forceful stop and that the protective search for weapons was reasonably necessary to neutralize the potentially dangerous situation while the officer conducted a proper investigation.
The federal and state constitutions prohibit only those searches and seizures which are unreasonable. The critical determination in each case is the reasonableness of the police conduct under the specific circumstances of the particular case. The officer in Terry had reasonable cause, on the basis of the specific circumstances that he had observed, to believe that the three men were planning an armed robbery, and he reasonably proceeded to seize their persons for the purpose of an immediate investigation into their activities. The additional step of conducting a protective search for weapons also constituted reasonable behavior under the particular circumstances. Thus, the reasonableness of the seizure of the men and of the protective search was measured against the known facts and circumstances under which the seizure and search occurred.
By marked contrast, the officer in the present case, according to his own testimony (which was the only evidence offered by either side at the hearing on the motion to suppress), had no reasonable basis whatsoever for the initial stop of the four young men.[3] See State v. Franklin, 353 So.2d 1315 (La.1978). Compare State v. Smith, 392 So.2d 454 (La.1980).
The officer testified merely that he saw the four young men in the early morning hours walking across a parking lot toward the street in an area where a Mardi Gras parade had taken place only a few hours before. He did not describe any actions on their part which were indicative of criminal activities. While he testified that he recognized one of the young men (not defendant) as a "known burglar" and believed he was violating a "juvenile curfew", the officer did not state any objective facts underlying this assertion. Indeed, he candidly conceded on cross-examination that he had never seen the "known burglar" before and that he was mistaken in believing that the young man was a juvenile. He further admitted that his purpose in effecting the stop was merely "to check `em out [to] see what they were doing". Moreover, he had not received any information that night concerning burglaries or other crimes in the area, and he did not testify as to any prior *447 history of criminal activity in the area (so as to establish that this was a "high crime" area or an area in which drug transactions or burglaries had in fact occurred frequently in the recent past). Neither did he claim to have even an unverified tip that some crime had been or was about to be committed. See Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).
In summary, the officer (whose testimony was the only evidence presented) failed to articulate any objective factual basis for a reasonable belief that the young men were then engaged (or about to be engaged) in criminal activities.[4] The prosecution's evidence establishes no more than the officer's unfounded hunch that criminal activity was afoot merely because the group was seen walking on the street during the late evening of a popular and public social event.
The fact that four young people are merely walking about on the street at late hours of the night does not, without more, constitute a reasonable and lawful basis for a stop which restrains a person's freedom to leave. See Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).[5] Since the prosecution's evidence establishes nothing more than that bald fact, the trial court erred in ruling that the forceful stop was legal.
Accordingly, the conviction and sentence are set aside, the motion to suppress is granted, and the case is remanded.
NOTES
[1] Defendant was placed on 12 months inactive probation pursuant to La.R.S. 40:983 (conditional discharge for first offense possession).
[2] Because of our ultimate conclusion that the initial forceful stop was not reasonably justified, it is not necessary to decide whether requiring the men to empty their pockets was beyond the scope of a limited search designed solely to protect the officer against the possibility that the young men might be armed.
[3] When there is a contention that a warrantless search and seizure violated defendant's reasonable expectations of privacy protected by the Fourth Amendment, the prosecution must prove the lawfulness of the search and seizure. La.C.Cr.P. Art. 703.
[4] When a warrantless search is involved, the prosecution has the burden of proof, and the state must adduce sufficient facts at the hearing to support the trial court's finding that the search (and seizure) were reasonable under the Fourth Amendment. Whether an appellate court should remand to permit the state to present whatever additional facts may be available (as in the case of Simmons remands in connection with the admissibility of confessions) need not be addressed here. See State v. Simmons, 328 So.2d 149 (La.1976). The crime in this case was not a serious one (simple possession of marijuana, which is a misdemeanor), and the cost to society of enforcing Fourth Amendment standards by exclusion of reliable physical evidence is not outweighed by the utility of using exclusionary policy as an enforcement device. See Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).
[5] In Brown, the Court reemphasized that a Terry-type stop must be based on "objective criteria", that is, on a "specific basis for believing [the suspect] is involved in criminal activity". The Court stated:

"In the absence of any basis for suspecting appellant of misconduct, the balance between the public interest and the appellant's right to personal security and privacy tilts in favor of freedom from police interference.
* * * * * *
"When such a stop is not based on objective criteria, the risk of arbitrary and abusive police practice exceeds tolerable limits." 443 U.S. at 52-53, 99 S.Ct. at 2641.