STATE of Maine

v.

**Richard A. FILLION.**

Supreme Judicial Court of Maine.

Argued March 5, 1984.

Decided April 17, 1984.

Paul Aranson, Dist. Atty., Jonathan R. Chapman (orally), Asst. Dist. Atty., Portland, for plaintiff.

Steven R. Smith (orally), Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and GLASSMAN, JJ.

GLASSMAN, Justice.

After a jury-waived trial in Superior Court, Cumberland County, defendant Richard Fillion was convicted for attempted operating under the influence of intoxicating liquor. 29 M.R.S.A. § 1312–B (Supp. 1983–1984). He now appeals to this Court contending that the results of a blood test performed following his arrest should have been suppressed as the product of an unlawful investigatory stop. We find that the motion to suppress the blood test was properly denied, and we therefore affirm the judgment.

The defendant's motion to suppress was heard by the District Court prior to transfer of the proceedings to Superior Court. Only one witness was called at the hearing on the motion, Officer Ronald Nelson of

the Scarborough Police Department. On March 5, 1983, at approximately 2:30 a.m., Officer Nelson was on patrol, driving north on Route 1 in Scarborough, when he passed the tire warehouse located on the south bound side of the highway. Looking across to the warehouse, Nelson observed an automobile stopped in an alley at the side of the building, near the rear loading door. He noticed the vehicle had its lights on and also observed a person walking somewhere around the front of the vehicle. Nelson drove past the warehouse to an opening in the median strip dividing the north and south bound lanes, reversed direction, and drove back to the warehouse parking lot. As Nelson pulled up behind the car in the alley, the car's back up lights came on, and the car moved backward for a short distance. Nelson approached the driver, identified at the hearing as the defendant, asked him for identification, and was given the defendant's driver's license. Upon approaching the defendant, Nelson noticed a strong smell of vomit and liquor and saw vomit on the defendant's shirt and pants. The defendant's eyes were glassy and red, and his speech was slurred. Nelson asked the defendant to perform a field sobriety test and then placed him under arrest.

Officer Nelson testified that he originally approached the defendant because he suspected the defendant might be engaged in theft from the warehouse. He stated the warehouse was closed at the time of the incident and he had never seen a car at the rear of the warehouse at that hour of the morning. He also testified the warehouse was on a list of premises that Scarborough police officers are requested to check each night.

■ The defendant contends that Officer Nelson lacked legal justification for the initial stop[1] of the defendant's car and therefore the results of the blood test obtained as a result of that stop should have

been suppressed. *See State v. Babcock*, 361 A.2d 911, 914 (Me.1976). The State does not dispute that Officer Nelson's action in blocking with his police cruiser the defendant's egress from the alley amounted to a *Terry*-type stop. *See State v. Griffin*, 459 A.2d 1086, 1089 (Me.1983); *see also State v. Johnson*, 365 A.2d 497, 498 (Me.1976). In order to initiate an investigatory stop short of a formal arrest, a police officer must act upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *State v. Griffin*, 459 A.2d at 1089 (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)); *State v. Babcock*, 361 A.2d at 914. A showing of probable cause for arrest is not necessary. *State v. Griffin*, 459 A.2d at 1089; *State v. Rowe*, 453 A.2d 134, 136 (Me.1982); *State v. Rand*, 430 A.2d 808, 819 (Me.1981). We have recently summarized the applicable standard as follows:

> The Fourth Amendment to the United States Constitution and Article I, Section 5 of our Maine Constitution do require that the officer's objective observations, coupled with any relevant information he may have, together with the rational inferences and deductions he may draw and make from the totality of the circumstances, be sufficient to "reasonably warrant suspicion of criminal conduct" on the part of the party or parties subjected to the investigatory stop or detention, criminal conduct which has taken place, is occurring, or imminently will occur.

*State v. Griffin*, 459 A.2d at 1089. This standard requires that based upon the "totality of the circumstances," the detaining officer must " 'have a *particularized* and *objective* basis for suspecting the particular person stopped of criminal activity.' " *State v. McKenzie*, 440 A.2d 1072, 1076 (Me.1982) (emphasis added), quoting *United States v. Cortez*, 449 U.S. 411, 417–18,

---

1. Although the defendant challenges the legitimacy of the initial stop, he does not challenge the authority of Officer Nelson to administer field sobriety tests once Nelson had approached the defendant and observed his condition. *See generally State v. Little,* 468 A.2d 615 (Me.1983).

101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981).

■ While we have said that the question whether a particular stop is justified is "primarily a question of fact," *State v. McKenzie*, 440 A.2d at 1076, the question contains elements of fact and law. The nature of the detaining officer's subjective suspicion and the nature of the observations upon which that suspicion is based are questions of fact. The question whether the officer's suspicion is objectively reasonable is purely a question of law. The ultimate question of justification—*i.e.*, whether a reasonable suspicion exists in the mind of the officer—combines these elements. We will reverse the trial court's ultimate conclusion, containing as it does determinations of fact and law, only if no competent evidence exists to support it. *See also United States v. Garcia-Nunez*, 709 F.2d 559, 561 (9th Cir.1983); *United States v. Tate*, 694 F.2d 1217, 1222 (9th Cir.1982).

■ The stop in the instant case involved only the minimal intrusion occasioned by the action of Officer Nelson in parking his cruiser behind the defendant's car and approaching the defendant for identification. The defendant concedes that once Nelson approached him and observed his condition the officer was justified in taking the more intrusive step of administering the field sobriety test.[2] The issue before the motion judge was thus framed: Did the police officer have a reasonably warranted suspicion of criminal conduct sufficient to justify the minimal intrusion occasioned by his initial stop of the defendant? [3]

■ Officer Nelson testified that he initially approached defendant because he suspected the defendant might be engaged in theft from the tire warehouse. His suspicion was based on the following "specific and articulable facts":

1. The defendant and his automobile were seen on private property which, although not posted, was on a list of premises that Scarborough police were requested to check every night.

2. The defendant's car was parked in a small alley leading to the rear loading door of the warehouse.

3. The defendant was on the premises at 2:30 a.m., a time at which Officer Nelson had never seen a person or automobile at the rear of the warehouse. Taken as a whole these circumstances warranted a suspicion of criminal conduct rising above the "inarticulate hunches" proscribed in *Terry*, 392 U.S. at 22, 88 S.Ct. at 1880. We cannot say the District Court's conclusion that the stop was justified was clearly erroneous.

The entry is:

Judgment affirmed.

All concurring.

---

2. *See* footnote 1, *supra.*

3. *Terry* makes clear that in assessing a particular intrusion the court must balance the invasion of individual privacy against the government's need to investigate for effective crime prevention. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968); *State v. Babcock*, 361 A.2d 911, 914 (Me.1976).