STATE of Maine

v.

Brian H. THURLOW.

Supreme Judicial Court of Maine.

Argued June 21, 1984.

Decided Dec. 13, 1984.

---

Margaret J. Kravchuk, Dist. Atty., Gary F. Thorne (orally), Asst. Dist. Atty., Bangor, for plaintiff.

Stern & Goldsmith, J. Hillary Billings (orally), Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS, WATHEN, GLASSMAN, and SCOLNIK, JJ.

McKUSICK, Chief Justice.

On this appeal, defendant Brian Thurlow challenges a decision of the Superior Court (Penobscot County) not to suppress evi-

dence obtained against him in a *Terry*[1]—type investigatory stop of the automobile he was driving on February 6, 1980, on a public street in Bangor. In the process of routinely checking the identities of the occupants of the stopped vehicle, the police officer discovered that the driver was defendant Thurlow who, as an habitual offender, had had his license indefinitely revoked. Following his indictment for operating a motor vehicle while an habitual offender, 29 M.R.S.A. § 2298 (Supp.1984–1985), Thurlow moved to suppress that identification evidence as the fruit of an unlawful stop by the police. On June 3, 1980, a Superior Court justice, after a full hearing, denied the motion to suppress. Later that same month defendant was convicted in a jury-waived trial conducted by the same justice.

Defendant on appeal from that conviction challenges as clearly erroneous the justice's finding that the vehicle stop was justified by an articulable suspicion of criminal activity. He also argues that the trial court abused its discretion in allowing the State to reopen its case to present additional evidence after it had rested. Finding no merit in either contention, we deny the appeal.

Immediately after his conviction in June 1980 defendant took an appeal; but for a variety of reasons, including the replacement of his original appointed counsel and the departure from Maine of the court reporter who had recorded the suppression hearing, prosecution of his appeal was delayed. When the new defense counsel's efforts to obtain a transcript of the 1980 proceedings on defendant's suppression motion proved unavailing, he presented to the same Superior Court justice who had heard that motion a written narrative statement recounting the 1980 proceedings.[2] At a hearing held on May 9, 1984, that justice orally supplemented defendant's narrative statement,[3] and then approved that state-

---

**1.** So named after *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**2.** The pertinent part of defendant's narrative statement reads as follows:

Officer John Roach, a patrolman in the Bangor Police Department, who had been employed in that capacity for approximately a year-and-a-half, was on duty in his uniform and in a marked police cruiser at approximately 6:19 p.m. on the evening of February 6, 1980. He was in the area of Jackson Street in Bangor, Maine pursuant to a radio communication from Sergeant Guerin of the Bangor Police Department. The nature of the call from Sergeant Guerin was that someone suspicious was hanging around lurking in a dark car across the street from Young's Market.

**3.** The justice's 1984 recollection of the 1980 suppression proceeding was as follows:

[T]here was evidence in the case that this young lady at Young's Market on Ohio Street was tending the market, working in the market, and she observed a car across the street, a side street from Ohio that went up the hill towards the stand pipe; and it was a steep street, and this car was parked there. It had been there an hour or more, and she had observed it several times with two people sitting in the car, and they were looking straight into the store, and she was uncomfortable because there had been several Nite Owl robberies in Bangor within a fairly short period

of time prior to that. She called the police and made a complaint, and Sergeant Guerin then got in touch with the patrol car in which Officer Roach was in, and Officer Roach went down to investigate the complaint, having had the description of the car and the license number, and he followed the car, stopped the car, inquired of the Defendant operator for his license and registration. The Defendant said he had no license with him. He looked at the registration, and it was in a woman's name who turned out to be the Defendant's mother. He obtained the operator's name and date of birth and called in on the radio for a computer check, and it came back that the Defendant was a habitual offender. He arrested the Defendant and they went to the jail. When they processed him, as they call it, asked him to dump out the contents of his pockets on the table, lo and behold, his notice of being a habitual offender appeared.

. . . .

[Officer] Roach didn't have himself very much information. He simply got a call that there was a suspicious looking car and to go check it out. Then when he got there and the car moved, he, as the narrative says, he called back Sergeant Guerin who had the information from the young lady; and the information he had from the young lady is, as I have stated, that she observed the car there and the car was on that steep hill, and there was testimony also that it was an unusual place to

ment as so supplemented for inclusion in the record on appeal pursuant to M.R. Crim.P. 39(b). That narrative statement with the justice's 1984 oral supplementation constitutes the record on the basis of which appellant Thurlow asks us to hold that the Superior Court's June 3, 1980, denial of his suppression motion was clearly erroneous. What is before us, however, does not establish any clear error on the part of the Superior Court.

■ A police stop of a vehicle on a public street for the purpose of investigating crime involves a minimal intrusion upon the interests protected by the fourth amendment and its counterpart in the Maine Constitution. *See Terry v. Ohio,* 392 U.S. 1, 16–20, 88 S.Ct. 1877–79 (1968); *State v. Griffin,* 459 A.2d 1086, 1089–90 (Me.1983). For such an investigatory stop without a warrant to be "reasonable" under controlling constitutional mandates, the police need not have probable cause to believe a crime has been committed or is about to be committed; they need have only an articulable suspicion that criminal activity is afoot. *Id.* Whether for a particular vehicular stop the police had the required articulable suspicion is always a question of fact to be decided by the trial judge who hears the witnesses at the suppression hearing. He, and he alone, passes upon the credibility and weight of that testimony and decides what inferences and deductions can reasonably be drawn therefrom. *Cf. Dunton v. Eastern Fine Paper Co.,* 423 A.2d 512, 514–17 (Me.1980) (findings of fact in workers' compensation cases). In exactly the same way that we review any other finding of fact by a trial court, the Law Court will reverse a nonsuppression decision based on the factual finding of articulable suspicion only if the record presented to us on appeal establishes that the finding is clearly erroneous. *State v. Fillion,* 474 A.2d 187, 190 (Me. 1984); *see also True v. State,* 457 A.2d 793,

795 (Me.1983). With the limited view that the substitute record on appeal gives us in the case at bar, we cannot ascribe clear error to the justice who heard all the live testimony on the suppression motion.

■ A number of circumstances objectively support the justice's finding that the police did have the articulable suspicion that justified them in checking up on the occupants of the parked car, who had been looking "straight into" Young's Market for more than an hour after dark on a mid-winter evening. "[T]here had been several Nite Owl robberies in Bangor within a fairly short period of time prior to that." The car was parked on a side street across from the market at a spot where the occupants could look directly into the store; that spot "was an unusual place to park a car because of the steepness of the street, and it was rarely, if ever, that anyone parked there." The reliability of the observations and suspicions of the clerk at Young's Market was a matter to be sized up by the suppression justice. From all that we can know from the truncated record on appeal, the Bangor police, through acquaintanceship with the complaining clerk and through confirmation of her suspicions by their own familiarity with the steep hill on which the driver of the car had chosen to park in a position to look straight into the market, were entitled to give considerable weight to her complaint. In any event, the suppression justice was in a far better position than are we to give the totality of the circumstances a proper appraisal. We must defer to his factual assessment made immediately after hearing the witnesses.

■ Defendant's other contention, that it was improper for the trial judge to allow the State to reopen its case, is likewise unfounded. At trial, the State entered in evidence what it believed to be a document certified by the Secretary of State and stating defendant's driving status. The motion to admit that document drew an objection

---

park a car because of the steepness of the street, and it was rarely, if ever, that anyone

parked there in the witness' observation.

from defendant's counsel. As it turned out, counsel for the State had mistakenly offered the wrong piece of paper, and rested before discovering the error. When the court pointed out that the State's exhibit did not correspond with its oral argument, the prosecution moved to reopen its case for the purpose of presenting the correct document. The court granted the motion, and the proper document was received in evidence. The decision to allow the motion under M.R.Crim.P. 26(c) is to be reviewed only for an abuse of discretion. *State v. Colomy*, 407 A.2d 1115, 1119 (Me.1979). No such abuse of discretion is present in this case. Defense counsel was fully aware of the intended nature of the first document submitted and objected to its admission in evidence. In this circumstance, defendant was not prejudiced in any way by the reopening of the State's case.

The entry is:

Judgment affirmed.

WATHEN and SCOLNIK, JJ., concurring.

GLASSMAN, Judge, with whom Nichols, Judge, joins, dissenting.

I respectfully dissent. I believe the suppression justice erred in finding the initial stop of the defendant's vehicle to be lawful. When a law enforcement official detains an individual to investigate suspected criminal activity, that individual has been seized in a fourth amendment sense. *Reid v. Georgia*, 448 U.S. 438, 440, 100 S.Ct. 2752, 2753, 65 L.Ed.2d 890 (1980); *State v. Rand*, 430 A.2d 808, 817 (Me.1981). Because the fourth amendment requires that all seizures be reasonable, a police officer is not free to detain an individual absent justifying circumstances. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981); *Terry v. Ohio*, 392 U.S. 1, 16–19, 88 S.Ct. 1877–79 (1968). To justify the intrusion, the detaining officer must "have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United*

*States v. Cortez*, 449 U.S. at 417–18, 101 S.Ct. at 694–95. Stated otherwise:

The Fourth Amendment to the United States Constitution and Article I, Section 5 of our Maine Constitution do require that the officer's objective observations, coupled with any relevant information he may have, together with the rational inferences and deductions he may draw and make from the totality of the circumstances, be sufficient to "reasonably warrant suspicion of criminal conduct" on the part of the party or parties subjected to the investigatory stop or detention, criminal conduct which has taken place, is occurring, or imminently will occur.

*State v. Griffin*, 459 A.2d 1086, 1089 (Me. 1983). In determining whether an articulable suspicion exists, the court must look to the "totality of the circumstances." A finding that the police had a particularized and objective suspicion that criminal activity was or was about to be afoot will be reversed only if clearly erroneous. *State v. Fillion*, 474 A.2d 187, 190 (Me.1984).

Looking as we must at the collective knowledge of the police to determine the legality of the stop of the defendant's automobile, *State v. Gervais*, 394 A.2d 1183, 1189 (Me.1978), the specific question presented is whether a person of reasonable caution, aware of recent robberies of grocery markets in Bangor, would be warranted in suspecting criminal activity because during the early winter evening two people in a legally parked car on a steeply graded public street for over an hour had been "looking straight into" a market from across the street, and had then driven away.

The record discloses that from his own observations of the defendant's vehicle, Officer Roach "found nothing peculiar or unusual" and "no reason to be suspicious of criminal conduct." The stop of the defendant's vehicle was entirely on the basis of the clerk's observations which had been communicated to Officer Roach by Sergeant Guerin. The majority attributes a possible acquaintance between the com-

plaining clerk and the Bangor police which, together with their knowledge of the area, might have allowed the officers to place a heightened confidence in her report to them. This is simply speculation unsupported by the record. We assume the accuracy of her report and further grant that the defendant's "looking straight into" the store made her "uncomfortable." Even so, the clerk's observation, on which the police relied, does not give rise to an articulable suspicion of criminal activity. Indeed, *Terry v. Ohio*, 392 U.S. at 23, 88 S.Ct. at 1881, acknowledged by the majority as the seminal decision regarding investigatory stops, places the clerk's apprehensions and the defendant's alleged activity in the proper perspective: "Store windows ... are made to be looked in." We have before rejected as an articulable suspicion an informant's hunch that something about the defendant was suspicious, and I believe we should do so here. *State v. McKenzie*, 440 A.2d 1072, 1076 (Me.1982).

Moreover, we are required to review the propriety of the finding below in light of the totality of the circumstances of which the police were aware *at the time of the detention,* including the fact that the defendant, prior to the arrival of the police, had driven away from Young's Market. In *United States v. Posey,* 663 F.2d 37 (7th Cir.1981), *cert. denied,* 455 U.S. 959, 102 S.Ct. 1473, 71 L.Ed.2d 679 (1982), the Seventh Circuit considered the legality of an investigatory stop in an analogous fact pattern. In *Posey,* a police officer observed the defendant, on a weekday afternoon, drive several times past a bank in Steele, Alabama. Reacting to a radio bulletin put in by the officer, another officer stopped the vehicle in question some fifteen miles from the point of initial observation. Discussing the propriety of the District Court's finding of an articulable suspicion, the *Posey* court stated:

> Even assuming *arguendo* that Posey's conduct in Steele constituted justification for a *Terry* stop, that justification had evaporated by the time of the stop. Presumably, the criminal activity of which Posey was suspected by Chief Graham was preparing to rob the Steele bank. Once Posey was fifteen miles outside of Steele traveling away from that town it cannot fairly be contended that Posey's conduct gave rise to a reasonable suspicion that a crime had been committed or was about to be committed. Accordingly, we conclude that the stop of Posey was violative of his fourth amendment rights ....

*Id.* at 41; *see also United States v. Roy,* 568 F.Supp. 1127 (D.Conn.1983) (even if circumstances preceding detention of defendant gave rise to reasonable suspicion that robbery might ensue, justification for a *Terry* stop vanished after defendant, on own volition, left scene of suspected criminal activity).

In the instant case, as in *Posey,* "even assuming *arguendo*" that the defendant's conduct constituted justification for a *Terry* stop, that justification evaporated once he departed from the area of Young's Market. Because the only basis for the stop was the unsupported, vague anxieties expressed by a youthful clerk at Young's Market, I believe the stop of the defendant's vehicle was unlawful. The evidence obtained as a result of the stop should have been suppressed.