**UNITED STATES of America, Plaintiff,**

v.

**Juan M. FELICIANO, Defendant.**

**No. 93 CR 70.**

United States District Court,
N.D. Illinois, E.D.

Aug. 16, 1993.

Lance C. Malina, U.S. Attys. Office, Chicago, for plaintiff.

Stephen J. Knorr, Federal Defender Program, Chicago, IL, Beth Ellen Peccarelli, Geneva, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

Several police officers saw incidents, learned and remembered facts which led to a stop and frisk which uncovered a weapon. The collective knowledge of all officers is what counts, *United States v. Hensley*, 469 U.S. 221, 232, 105 S.Ct. 675, 682, 83 L.Ed.2d 604 (1985), and for ease of analysis, I recite the facts as if only one police officer ("officer") were involved.[1]

Officer was on patrol near midnight in downtown Elgin. He was in plain clothes and an unmarked car. He saw two men walking normally, cross the middle of a well lit street near the train tracks. One (Feliciano) wore a dark jacket; the other (Mason) wore a multi-colored jacket. Officer also saw a young male Laotian (Sath) standing near the Elgin train station. Officer saw Feliciano and Mason were looking at Sath who was the only person in the area. Feliciano and Mason went to a corner of the train station parking lot where no vehicles were parked. They stood near an embankment of the Fox River. The embankment is a few feet above the river, and there are no steps down to the

river. Officer moved and was unable, for a few moments, to see anyone but Sath. Then Mason came up to Sath, spoke to him, and then walked in the direction of where he had come from. Sath picked up his suitcase, and walked away in another direction, westward. Officer then saw both Feliciano and Mason look at Sath, for a few seconds, and then walk eastward. Officer went up to Sath and learned that Mason asked Sath to come help his injured friend. Sath said no because, as Sath told Officer, Sath had seen the friend walk and the friend was uninjured. Mason then asked Sath if he had 50 cents, Sath said he had used all his money for a train ticket and had none left. Mason walked away. Sath told Officer that he thought Mason and Feliciano were going to "mug" him.

▮ Officer believed Sath was probably right and he thought "if they failed to rob one person, they may try to rob another one." At that time of night there was no one there but Sath, Mason and Feliciano. Officer decided to stop Mason and Feliciano. He began to look for them. Officer then saw Mason and Feliciano walking on the lighted streets. When he got close he recognized Feliciano as a member of the Latin King gang who, on a previous occasion, told Officer his name and that he had just been released from prison.[2] Officer stopped Feliciano and Mason and frisked them both, discovering a 22 caliber Beretta semi-automatic pistol in Feliciano's sock. A knife and small cleaver were found on Mason.

The exclusionary rule is designed, perhaps poorly so, to protect some of the rights guaranteed by the Constitution. One desirable consequence of the rule is that it often fosters better police work; more aggressive investigation to corroborate what the police

---

1. There are some minor disagreements among the three officers about what occurred. My recitation of facts is also my finding of facts on these questions.

2. Feliciano would have me disregard this fact because the sergeant who ordered the stop did not know it; but the patrol officer who made the stop did know it before the stop was actually made. While there is some language in the opinions which suggests that the knowledge of the officer who orders or requests a stop is the only thing that matters, these opinions usually

concern cases where the officer who made the stop knows nothing. The correct rule is that the collective knowledge of all officers working together is used to effect a stop used to decide whether the stop is justified. As Judge Lumbard put it in one of the earlier cases, "where the agents were working together ... the knowledge of each was the knowledge of all." *United States v. Romero*, 249 F.2d 371, 374 (2d Cir.1957); *see also United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

suspect may be the case. The hardworking officer will get good warrants where the lazy officer will not.[3]

One perverse consequence of the exclusionary rule in stop and frisk cases is that it often deters only the alert, energetic and dutiful officer. The uncaring time-server who wears a star will rarely be stirred to stop and frisk anyone. It is much easier to sit and just watch even the most suspicious conduct than it is to intervene before it becomes obvious to anyone that a crime is being committed. The indifferent officer always waits until there is probable cause and perhaps even longer than that. It is always safe to wait until the failure to act might subject one to discipline.[4]

In this case, one could not have disciplined Officer for letting Feliciano and Mason walk away. On the other hand, what Officer did here would not have been done by an indifferent officer. No motion would need to be decided because no stop would have been made and no gun recovered. However, the application of the exclusionary rule is not to be avoided because Officer was doing his best. We do sometimes apply rules to exclude evidence seized by officers who have done their best and acted in the belief they were within the law. If this is wrong, it is not up to this Court to change it.

Under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a stop and frisk of a person is permitted when the police have a reasonable suspicion, supported by articulable facts, that the person was, is, or is about to be, engaged in criminal activity. *Id.* at 22, 88 S.Ct. at 1881. The doctrine is explicated in *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *United States v.*

*Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); and *United States v. Hensley,* 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985).

■ The test of whether suspicion is reasonable, is flexible, and dependent on the totality of the circumstances—there is no bright-line rule. *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990).

In this case, the facts are clearly articulated by Officer. Feliciano or Mason walked openly on the street and then to a place near a river. They neither ran nor hid. Walking to a parking lot where there are no cars does establish that they were not walking to their car, but it also establishes that their purpose was not to steal cars. The encounter with Sath might have been attempt robbery under Illinois law. *If* Feliciano and Mason had intended to take money from Sath by force or threat, *then* Mason's false claim to Sath that Feliciano was injured and needed assistance was a substantial step toward the commission of the offense. The spider's invitation to the fly. Sath thought he was going to be mugged and his reasons for thinking so were not all that inadequate. He knew Mason wanted money; he knew Feliciano and Mason were together (so it was two against one); he knew Mason wanted him to go where Feliciano was standing and that Mason lied to him to get him to do so. Most people (including police officers) would regard Mason's actions as giving rise to a reasonable suspicion that a crime was in the making. And this is true even if one leaves out (as was done here) any calculations based on the demeanor of Mason toward Sath. Demeanor often signals intent, but it is difficult to articulate what it is that is alarming about

---

**3.** This salutary effect is sometimes offset by the understandable tendency of police and other legal lay people to see judicial decisions as formulae to be followed to obtain a particular result. Some police departments have prepared probable cause recipes and put them on word processors; the officer then selects the recipe which fits the officer's case. One court thought this practice to be unwise where the officer clearly knew more to support the warrant than was implied by the formula he selected from the

memory bank. *See Coleman v. State,* 308 Ark. 631, 826 S.W.2d 273, 275 (1992).

**4.** Justice Schaefer once suggested that the outer limit of the exclusionary rule could be defined in these terms: he wrote, "when a police officer could justifiably be disciplined for failure to act, his action can hardly be characterized as unreasonable." *People v. Moore,* 35 Ill.2d 399, 403, 220 N.E.2d 443, 445 (Ill.1966), *cert. denied,* 389 U.S. 861, 88 S.Ct. 112, 19 L.Ed.2d 128 (1967).

demeanor[5] and Sath did not say he was alarmed by Mason's demeanor.

After Officer spoke to Sath he had, of course, no proof of attempt robbery because he had only circumstances suggesting but not proving Feliciano's and Mason's intent. Intent could be proven by the admission of either Mason or Feliciano or by the testimony of some third person to whom they admitted their intent, but none of this evidence would be readily available. The law does not require such evidence in order to justify either stop or arrest. There are few cases which talk about the degree of certainty required for probable cause, but it is not very high. Indeed, grave errors by police are not inconsistent with probable cause. *Hill v. California*, 401 U.S. 797, 802, 91 S.Ct. 1106, 1110, 28 L.Ed.2d 484 (1971) (mistaken identification is an adequate basis for probable cause even where the subject protested, truthfully, to the officers that he was not the man for whom they were looking); *Houser v. Geary*, 465 F.2d 193, 196 (9th Cir.1972) (the officer's "inferences might be wrong in fact, but they are ... more reasonable than not, and that is enough for probable cause"), *cert. denied*, 409 U.S. 1113, 93 S.Ct. 927, 34 L.Ed.2d 696 (1973). One rare attempt to define the quantum of proof for probable cause is found in the older case of *Browne v. State*:

> [I]t is not necessary that the evidence be sufficient to prove ultimate guilt beyond a reasonable doubt or even that it be sufficient to prove that guilt is more probable than not. It is only necessary that the information lead a reasonable officer to believe that guilt is more than a possibility.

24 Wis.2d 491, 129 N.W.2d 175, 180 (1964), *cert. denied*, 379 U.S. 1004, 85 S.Ct. 730, 13 L.Ed.2d 706 (1965).

Other courts have implied that probable cause requires proof that criminal conduct is more probable than not, *see People v. Mercado*, 68 N.Y.2d 874, 508 N.Y.S.2d 419, 422, 501 N.E.2d 27, 30 (1986), *cert. denied*, 479 U.S. 1095, 107 S.Ct. 1313, 94 L.Ed.2d 166 (1987), but most recent cases do not support this view. *See United States v. Cruz*, 834 F.2d 47, 50 (2nd Cir.1987), *cert. denied*, 484 U.S. 1077, 108 S.Ct. 1056, 98 L.Ed.2d 1018 (1988). There is some evidence to support the view that the preponderance of the evidence is not the standard for probable cause. *Gerstein v. Pugh*, 420 U.S. 103, 121, 95 S.Ct. 854, 866, 43 L.Ed.2d 54 (1975) ("probable cause determination ... does not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands"); *Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983).

■ What is the standard of proof in probable cause cases may be open, but the standard will not be higher than more probable than not. What is not open is that less evidence is required for reasonable suspicion than is needed to show probable cause. *Alabama v. White*, 496 U.S. 325, 328, 110 S.Ct. 2412, 2415, 110 L.Ed.2d 301 (1990). The "level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989).

■ There is quite enough here. Midnight in a deserted downtown area negates many of the ordinary, lawful reasons why one would be walking about. *See* 3 Wayne R. La Fave, *Search and Seizure*, § 9.3(c), at 454–55 (1987). It is true that Officer could have concluded that Feliciano and Mason were out for a late night walk and that Mason was simply tempted to beg a few coins from a stranger. But there is that lie, "come help my injured friend," and it is the lie that makes all of the other behavior suspicious in the mind of a reasonable person. This is true even when one does not consider that Officer knew Feliciano was a gang member just released from a prison sentence for armed robbery. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), suggests that this fact cannot be considered: "flat statement that Spinelli was 'known' ... as a gambler ... may [not] be used to give additional weight to allegations that would otherwise be insufficient." *Id.* at 418–19, 89 S.Ct. at 590–91. But in *Spinelli*,

---

**5.** Stops have failed to pass muster because police officers do not explain why precisely someone "looks suspicious." *Brown v. Texas*, 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979).

the suspect was simply "known" to be a gambler which the Court regarded as no more than a "simple assertion of police suspicion." *Id.* at 418, 89 S.Ct. at 590. And other courts have reached similar results where the grounds for the stop were "known" offenders. *State v. Phipps,* 429 So.2d 445, 446 (La.1983). Prior convictions are something else entirely. Of course, a stop may not be made solely because an individual is a convict. *Kenion v. United States,* 302 A.2d 723, 725 (D.C.App.1973); *State v. Collins,* 479 A.2d 344, 346 (Me.1984). But a person's prior conviction can be considered as part of the evidence on which reasonable suspicion may be based. *United States v. Chamberlin,* 644 F.2d 1262, 1265 (9th Cir.1980), *cert. denied,* 453 U.S. 914, 101 S.Ct. 3148, 69 L.Ed.2d 997 (1981); *United States v. Barnes,* 496 A.2d 1040, 1045 (D.C.App.1985) (defendant's prior arrest for armed robbery could render suspicious his loitering outside a store while his companion entered the store several times).

■ At this point, one might wonder why this suppression motion merits a written opinion. The answer is found in time and distance. Feliciano was frisked when he was walking away from the place of encounter with Sath. He was 250 to 300 yards from where Officer spoke to Sath. And there was no other soul about in downtown Elgin for anyone to strike up a conversation with or to rob. If the danger has passed, can the police stop and frisk? Some judges thought that *Terry v. Ohio* applied only to suspects who have just committed a crime or are about to do so. *See Anderson v. State,* 282 Md. 701, 387 A.2d 281, 285 (1978). But the justices did not share that view. In a brief footnote dictum the Court said, "Of course, an officer may stop and question a person if there is reasonable grounds to believe that person is wanted for past criminal conduct." *United States v. Cortez,* 449 U.S. 411, 417 n. 2, 101 S.Ct. 690, 694 n. 2, 66 L.Ed.2d 621 (1981). This dictum became a holding in *United States v. Hensley,* 469 U.S. 221, 227–29, 105 S.Ct. 675, 679–80, 83 L.Ed.2d 604 (1985), where the Court noted that a stop to investigate a past crime serves different purposes than a stop to investigate ongoing criminal activity—the prevention of crime is not so

directly involved, public safety may be less threatened and the police may have a wider range of opportunity to choose the time and circumstances of the stop. The Court held:

> We ... do not decide ... whether *Terry* stops to investigate all past crimes, however serious, are permitted. It is enough to say that, if police have a reasonable suspicion ... that a person they encounter was involved in ... a completed felony, then a *Terry* stop may be made to investigate that suspicion.

*Id.* at 229, 105 S.Ct. at 680. There was no dissent.

Before *Hensley,* the Seventh Circuit *may* have assumed that a stop for a past crime was not permissible. In *United States v. Posey,* 663 F.2d 37 (7th Cir.1981), *cert. denied,* 455 U.S. 959, 102 S.Ct. 1473, 71 L.Ed.2d 679 (1982), Posey drove his car past a bank in Steele, Alabama, several times. The businesses near the bank were all closed. Posey, who had a companion, looked at both the bank (which had recently been robbed) and a local police officer in a "suspicious manner." Posey drove away without doing anything else. State police officer radioed other officers in the county and asked for a stop of Posey. The stop was made fifteen minutes later and fifteen miles away from Steele. The Court of Appeals said:

> [The officer's] testimony does not persuasively indicate what in his experience as a police officer would cause him to reasonably suspect, based on Posey's conduct ..., that criminal activity was afoot.... [His] observations did not lead him to take the 'necessarily swift action' authorized by *Terry* ... Even assuming ... justification for a *Terry* stop, that justification had evaporated by the time of the stop. Presumably, the criminal activity was ... to rob the Steele bank. Once Posey was fifteen miles outside of Steele traveling away from that town it cannot fairly be contended that Posey's conduct gave rise to a reasonable suspicion that a crime had been committed or was about to be committed.

*Id.* at 41 (citations omitted).

The Court of Appeals did not have to decide the question of stops for past crime

since there was no justification for the stop in the first place. In any event, *Posey* does stand for a proposition that reasonable suspicion can evaporate. As an abstract proposition, this may not be consistent with *Hensley*. But it does not matter here. Fifteen minutes and fifteen miles away from the Steele, Alabama bank is not the same thing as a couple of minutes and three hundred yards from Sath. From the police perspective the cases are similar. Officers decided to stop, time passed before the stop was made; in Alabama a lot of time passed. But if time and distance are relevant, as *Posey* says, then their relevance must be measured by their degree. If "evaporation" is the apt analogy, it makes sense to say that very little evaporation occurred in this case.[6]

After all this is said, I think Feliciano's case is less a stop for a past crime (though that theory is sound) and more the "necessarily swift" action that the Supreme Court contemplated in *Terry*. A reasonable police officer could reasonably suspect that Feliciano and Mason were on a criminal prowl and the fact that Officer could see no other potential victim in downtown Elgin at midnight does not preclude a stop. Officer could reasonably act, as he did, on his concern that another Sath (or Sath himself) might be walking or standing unseen nearby or might soon enter downtown Elgin.

█ One final point made by Feliciano is that everything said so far might be a good reason to stop Mason but not Feliciano. Feliciano did not approach Sath or lie to him. Feliciano was stopped and frisked only because he was "in the company of others who ... are suspected of criminal activity." *United States v. Wheeler*, 800 F.2d 100, 103 (7th Cir.1986), *overruled on other grounds*, 830 F.2d 393 (7th Cir.1987). This "mere propinquity" is not enough. *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979).[7] But there is not mere propinquity here, Feliciano was not simply standing next to someone in a bar as Ybarra was. Mason and Feliciano walked together from the beginning of the incident to the end, both looked at Sath, and Mason's statement to Sath suggests (and proof is not necessary here) they were acting together.

The Motion to Suppress Evidence is Denied.

---

6. Feliciano suggests that he was walking back to his home. Had it taken Officer more time to find him and Officer did then find him in front of his home, this case would be closer to Posey's and, more importantly, Officer would have had to add an exculpating fact to the mixture of information that led to his suspicions.

7. The stop was justified and because it was justified, there is no need to inquire whether a frisk was appropriate. The suspected offense was robbery, and Feliciano was a convicted armed robber.