STATE of North Dakota, Plaintiff
and Appellee,

v.

Jeffrey Clint ROBERTSDAHL,
Defendant and Appellant.

Cr. No. 930313.

Supreme Court of North Dakota.

Feb. 23, 1994.

Robin L. Olson, Nelson Law Office, Fargo, for defendant and appellant.

Ronald W. McBeth, Asst. State's Atty., Wahpeton, for plaintiff and appellee; submitted on briefs.

LEVINE, Justice.

Jeffrey Clint Robertsdahl appeals from judgment of conviction of driving while under suspension. We reverse.

At about 1:50 a.m. on July 17, 1993, Deputy Sheriff Owen Shelstad saw "a car leave the area of the Christine Liquor store." Shelstad followed the car as it drove a few blocks and "headed back towards the bar." He stopped the car after it turned south and west, and was "heading out of town." Shelstad based the stop on his unfamiliarity with the car and the number of burglaries in the county. Shelstad stated in his report, "Because of the number of burglaries we have had in the county, and surrounding counties, the possibility existed that the driver dropped somebody off to enter the bar or the Christine Mercantile, which has in it a post office, a grocery store, a beauty salon, and a laundry mat [sic], I felt that it was extremely important to 'ID' the driver." Shelstad did not report any illegal or suspicious behavior on the part of the driver. Upon stopping the car, Shelstad discovered that the driver was Robertsdahl. Shelstad knew Robertsdahl's license was either suspended or revoked and arrested him.

Robertsdahl was charged with driving while under suspension, NDCC § 39–06–42. He moved to dismiss, arguing that Shelstad lacked a reasonable and articulable suspicion to make the stop. The trial court denied the motion. Robertsdahl filed a conditional guilty plea, reserving the right to appeal from judgment based on the trial court's denial of his motion to dismiss. The trial court sentenced Robertsdahl to thirty days in jail and ordered him to pay a fine. Roberts-

dahl's sentence is stayed pending our decision.

To make a legal investigative stop of a vehicle, an officer must have a reasonable and articulable suspicion that the motorist has violated or is violating the law. *E.g., Wibben v. North Dakota State Highway Comm'r*, 413 N.W.2d 329 (N.D.1987). Whether an officer has a reasonable and articulable suspicion is determined according to the information known to the officer at the time of the stop. *State v. Miller*, 510 N.W.2d 638 (N.D.1994). The reasonable-and-articulable-suspicion standard requires that the officer justify the stop "with more than just a vague 'hunch' or other non-objective facts; and ... the articulable facts must produce, by reasonable inference, a *reasonable* suspicion of unlawful conduct." *Bryl v. Backes*, 477 N.W.2d 809, 811 n. 2 (N.D.1991) (quoting *State v. VandeHoven*, 388 N.W.2d 857, 858 n. 1 (N.D.1986)). The Fourth Amendment requires "some minimal level of objective justification" for making the stop. *INS v. Delgado*, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984).

In *State v. Sarhegyi*, 492 N.W.2d 284 (N.D.1992), we held that the stopping officer lacked a reasonable and articulable suspicion. In that case, the officer stopped "a passenger car in a farm implement lot in the middle of the night" after the car started to leave the lot. *Id.* at 285. We concluded that the officer's grounds for the stop, "the time of night, the burglary possibilities, ... if the car was stolen, ... and the fact that Sarhegyi began to pull away from him as he entered the lot," were legally insufficient bases for reasonable suspicion. *Id.* at 286; *see also* Loralyn Eckelberg Clark, Case Comment, 69 N.D.L.Rev. 999 (1993) [discussing *Sarhegyi* ].

Here, the facts, as the trial court found them, are undisputed:

"1. The time was 1:50 a.m.,

2. Vehicle was leaving the area of the Christine Liquor store—a store that would be closed at 1:50 a.m.,

3. Subject vehicle made four corners as it was being observed by the deputy,

4. Subject vehicle was heading back to the bar—a store that would be closed at 1:50 a.m.,[1]

5. Subject vehicle was unknown to the deputy,

6. The deputy was aware of several burglaries in the area."

This case is not substantially different from *Sarhegyi*. Shelstad's unfamiliarity with the vehicle, his knowledge of past burglaries in the county, and the vehicle's location in the vicinity of some businesses after hours amount to no more than a "vague hunch" of illegal activity. While it may be arguable whether curiosity over a stranger in town merits some investigation, it clearly does not justify a stop. There was no objective evidence that Robertsdahl had violated or was about to violate the law. We conclude, as a matter of law, that the information known to Shelstad at the time of the stop was insufficient to raise a reasonable and articulable suspicion.

Reversed.

VANDE WALLE, C.J., and MESCHKE, SANDSTROM and NEUMANN, JJ., concur.

---

1. The undisputed evidence in this case reveals that Shelstad observed Robertsdahl "heading back towards the bar," not "to the bar" as the trial court found.