**STATE of Maine**

v.

**David DEAN.**

Supreme Judicial Court of Maine.

Submitted on Briefs May 12, 1994.

Decided Aug. 5, 1994.

Janet T. Mills, Dist. Atty., Joseph O'Connor, Asst. Dist. Atty., South Paris, for the State.

John S. Jenness, Jr., South Paris, for defendant.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN and DANA, JJ.

RUDMAN, Justice.

The State, with the required permission from the Attorney General, 15 M.R.S.A. § 2115–A(5) (1980); M.R.Crim.P. 37(b), appeals from the judgment entered in the Superior Court (Oxford County, *Alexander, J.*) after the court vacated the judgment entered in the District Court (South Paris, *Sheldon, J.*) on David Dean's conditional guilty plea to the charge of operating under the influence. 29 M.R.S.A. § 1312–B (Pamph.1993). Because the District Court's finding that the police officer who stopped Dean's car had the necessary "reasonable suspicion of criminal activity" was not clearly erroneous, we vacate the Superior Court's order and reinstate the District Court's judgment of conviction.

The underlying facts are undisputed. At approximately 11:00 p.m. on Tuesday, April 13, 1993, Officer Dennis Sampson of the South Paris Police Department spotted Dean's car while Sampson was patrolling a new residential development on Cobble Hill Road. The road is a dead end, and the development was uninhabited during weekdays. Sampson was patrolling the area at

the request of the development's property owners after a number of complaints of vandalism. No complaint had been made that night, and Dean's driving was unremarkable. Sampson stopped him solely because of his presence at that particular time and place. Sampson "wanted to see what they was up to, see if they were landowners or property owners, get some names in case we did have problems up in that area."

The District Court, in a well-reasoned opinion, ruled that Sampson had the necessary "reasonable suspicion" to justify the stop. The court stated:

> I'm not only mindful but respectful of [Dean's] argument that I'm suggesting that anyone who walks through a crime area can be stopped and interrogated. I wouldn't dare go that far. But I would suggest that anybody passing through a particular high crime area for no apparent reason—because the place is uninhabited—in the dead of night and alone might very well be stopped if my understanding of *Delaware v. Prouse* is correct.... [T]he State has to prove a negative, that the officer did not act arbitrarily. I believe that the State proved that the officer under these circumstances did not act arbitrarily and I deny the motion to suppress.

Dean successfully appealed to the Superior Court. The court quoted a portion of the suppression hearing transcript, including Sampson's statement that he "wanted to see what [Dean] was up to." The court then held that Sampson had no more than an "insufficient hunch" to justify the stop, and vacated Dean's conviction. The State appeals.

 We review directly the decision by the District Court. *State v. Worster*, 611 A.2d 979, 980 n. 2 (Me.1992); *State v. Arnheiter*, 598 A.2d 1183, 1184 (Me.1991). Whether an officer had the necessary reasonable suspicion to warrant an investigatory stop is a question of fact, reviewed only for clear error. *Worster*, 611 A.2d at 980.

 To make a valid investigatory stop, an officer must "act on the basis of 'specific and articulable facts which, taken with rational inferences from those facts, reasonably

warrant the intrusion.'" *Id.* (quoting *State v. Dulac*, 600 A.2d 1121, 1122 (Me.1992) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968))). The officer must suspect that criminal conduct has happened, is happening or is imminent. *State v. Fitzgerald*, 620 A.2d 874, 875 (Me.1992).[1] "The court must find that the officer actually entertained the suspicion and that the suspicion was reasonable under the circumstances." *Worster*, 611 A.2d at 980. The court may infer the necessary suspicion from the officer's testimony, and the police officer need not explicitly testify that he had the requisite suspicion. *State v. Chapman*, 495 A.2d 314, 317 (Me.1985). The conduct actually observed may be entirely lawful. *Fitzgerald*, 620 A.2d at 875.

Dean's contention is that Officer Sampson did not entertain any suspicion that Dean was engaged in criminal activity. Dean raises the specter of random stops in any high-crime area, justified solely by the fact that the person detained happens to be in that area.

The District Court, however, understood Dean's contentions and explicitly made the required findings:

> Now, I'll point out that the facts in this case suggest that this particular defendant was driving along a dead-end road at nighttime. The—the structures in the area were uninhabited, and it had been an area which had been the scene of a variety of criminal behavior which, in fact, brought ... if not residents then the property owners to the police. They asked for increased surveillance. Ordinarily, the officer could not have stopped this particular vehicle. But under the circumstances, given the fact that this occurred well after dark, that the place was virtually uninhabited, that it was a dead-end street and a crime area—area that—in which a substantial amount of crime had been perpetrated in the recent past—*I find that the officer acted properly because he reasonably suspected, based on prior reports of criminal activity in the area, that this*

---

1. A safety violation is enough. *State v. Pinkham,* 565 A.2d 318, 319–20 (Me.1989).

*particular Defendant could be engaged in such behavior.*

(Emphasis added.) The court thus found that Officer Sampson (1) actually entertained a suspicion, (2) that the defendant, Dean, was engaged in some sort of criminal activity, and (3) that Sampson's suspicion was reasonable. The first two findings are not clearly erroneous.

The only real issue is whether the two articulable facts relied on by the court can yield a reasonable suspicion. Those two facts are: (1) Dean's presence in an area of recent crime reports; and (2) the apparent absence of any reason to be in an uninhabited area at night. It is well-settled that a person's mere presence in a high crime area does not justify an investigatory stop. *See Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979); 3 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.3(c) at 457–58 ("simply being about in a high-crime area should not of itself ever be viewed as a sufficient basis to make an investigatory stop") (2d ed. 1987). However, the combination of the recent criminal activity with other articulable facts—in this case, the time of day and the fact that the area was uninhabited—creates a reasonable suspicion. *State v. Fortin,* 632 A.2d 437, 438 (Me.1993) (look at totality of circumstances). Many cases uphold a finding of a reasonable suspicion on similar facts. *See, e.g., United States v. Rickus,* 737 F.2d 360, 365 (3d Cir.1984) (car travelled very slowly at 3:30 a.m. in area recently victimized by numerous burglaries) ("The reputation of an area for criminal activity is an articulable fact upon which a police officer may legitimately rely."); *United States v. Ogden,* 703 F.2d 629, 633 (1st Cir.1983) (four out-of-state tractor trailer trucks at deep-water docking facility at night in area of Maine coast where authorities knew that drug smuggling was going on) ("there was no legitimate reason for the trucks being there"); *United States v. Holland,* 510 F.2d 453, 456 (9th Cir.1975) (car travelled very slowly down lightly-travelled dirt road at 1:00 a.m. near known drug factory, and occupants stared at police officers as they passed); *People v. Ellis,* 113 Ill.App.3d 314, 68 Ill.Dec. 885, 888, 446 N.E.2d 1282,

1285 (1983) (two men walked across shopping center parking lot at 1:25 a.m. in area recently victimized by rash of burglaries); *State v. Stark,* 502 S.W.2d 261, 263 (Mo.1973) (pickup truck carrying three occupants entered and left at 1:00 a.m. an apartment complex recently victimized by numerous crimes); *State v. Halstead,* 414 A.2d 1138, 1148–49 (R.I.1980) (truck drove very slowly through high-crime neighborhood at 4:30 a.m. and occupants gawked at police).

In a recent decision, also involving police surveillance of an area due to several complaints, we held that the District Court erred by failing to grant the defendant's motion to suppress. *State v. Nelson,* 638 A.2d 720, 721 (Me.1994). In that case, the police staked out an apartment complex in response to a number of theft complaints. *Id.* at 721–22. While watching the complex, a police officer observed two people in a parked pickup truck sharing a beer. One of them left the truck, got into his own car, and the truck drove away. The officer stopped the truck and arrested the driver for operating under the influence. We held that an adult drinking a single can of beer in a parked vehicle over the course of nearly an hour committed no violation of any kind, and therefore the police officer's suspicion was mere speculation. *Id.* at 722. In the *Nelson* case, however, the defendant was sitting in a truck in the parking lot of an occupied housing complex. Dean, in contrast, was driving through an uninhabited development site on a dead end street at 11:00 at night. His situation is distinguishable from that of the defendant in *Nelson.*

Dean's situation is more analogous to that of the defendant in *State v. Fitzgerald,* 620 A.2d 874 (Me.1993). After dark, a police officer spotted Fitzgerald's car entering a private turn-around, known to be the site of frequent illegal trash dumping, and posted with "no trespassing" signs by the owner. When the officer's vehicle drove into the turn-around, the defendant was standing next to his car. The defendant then got into his car and drove away. The officer stopped the defendant's vehicle, saw that the defendant displayed evidence of being under the influence of alcohol, and arrested him for

operating under the influence. *Id.* at 874. Although the officer never witnessed any illegality or impropriety (Fitzgerald never violated the no trespassing signs), we affirmed the finding that the officer had a reasonable and articulable suspicion, "based on the previous littering and trespassing," the fact that Fitzgerald was outside his car in the dark when the officer approached, and the fact that Fitzgerald tried to leave when he saw the cruiser. *Id.* at 875. Similarly, Officer Sampson's suspicion of Dean was engendered by prior complaints combined with other facts—the time of night and the absence of any apparent reason to be in an uninhabited housing development.

"[B]ut for [Dean's] intoxication, [this] would have been a brief investigatory stop." *Id.* (slightly modified). An investigatory stop of a motor vehicle is normally a minimal intrusion by the state into a person's affairs. *State v. Thurlow*, 485 A.2d 960, 963 (Me. 1984). Balancing the facts on which Officer Sampson relied to make the stop against Dean's right to be free from any arbitrary intrusions by the State, we find the District Court's findings that the officer's suspicion was reasonable and the stop was justified are not clearly erroneous.

The entry is:

Judgment of the Superior Court vacated. Remanded to the Superior Court with instructions to enter judgment affirming the judgment of the District Court.

WATHEN, C.J., and CLIFFORD and DANA, JJ., concurring.

GLASSMAN, Justice, dissenting.

I respectfully dissent. We have recently reemphasized that the reasonable articulable suspicion standard requires "more than mere speculation" on the part of the police officer to sustain an investigatory stop. *State v. Nelson*, 638 A.2d 720, 722 (Me.1994). Dean's behavior in driving *out of* a dead-end street at 11:00 p.m. on a Tuesday was in no sense illegal or even inherently suspicious, and the officer's desire to "see what [Dean] was up to" stems, at best, from a hunch.[1] "A mere hunch will not justify a stop, and the officer's reasons for stopping the vehicle must not be a mere pretext or ruse." *State v. Haskell*, 645 A.2d 619, 621 (Me.1994).

The court relies on a determination that the area adjacent to the street on which Dean had been stopped was uninhabited except on weekends and that the residents of the area had asked the police to conduct extra patrols, particularly on weekends when vandalism and the other property crimes in the area had occurred. As the court notes, it is well settled that a person's mere presence in a high-crime area does not justify an investigatory stop. What the court regards as "other articulable facts" justifying the stop, in reality, are mere speculations entertained by the officer because of Dean's presence on a public way in an area where there had been complaints of vandalism or other damage to property. Each of the cases cited by the court to support its position involves additional facts beyond the defendant's mere presence in a crime area, e.g., police observed unusual behavior by the defendant, intrusion onto private property, the unusual operation of a vehicle, or the vehicle's unusual location.

The constitutional right to be free from an illegal stop should not be abridged solely on the basis of the day of the week or time of day a car is being operated on a public way. Such arbitrariness is inconsistent with the

---

1. The court seeks to distinguish *Nelson* by noting that Nelson was sitting in a pickup truck parked in the parking lot of an occupied housing complex whereas Dean was observed driving a motor vehicle on a public way leading out of a largely uninhabited residential development site. This is inapposite because the surroundings in which the police observed Nelson were not at issue in that case, which turned on whether merely drinking a can of beer in a parked car provided a reasonably articulable suspicion that a crime had taken place. *Nelson*, 638 A.2d at 722. This case turns on the site of the stop.

protections afforded by the Fourth Amendment. *Haskell,* 645 A.2d at 621. The facts of this case do not support the court's determination that the officer who stopped Dean had a reasonable articulable suspicion of criminal activity by Dean. I would affirm the judgment of the Superior Court.