1998 ND 69

**CITY OF FARGO, Plaintiff and Appellee,**

v.

**Mark Bjorn OVIND, Defendant and Appellant.**

**Criminal No. 970198.**

Supreme Court of North Dakota.

March 30, 1998.

Charles A. Stock (argued), of Vogel, Kelly, Knutson, Weir, Bye & Hunke, Ltd., Fargo, for defendant and appellant.

Stacey Tjon Aasland (argued), City Prosecutor, Fargo, for plaintiff and appellee.

MARING, Justice.

[¶ 1] After entering a conditional guilty plea to driving under the influence, Mark Bjorn Ovind appeals from the district court's order denying his motion to suppress evidence. We conclude the officer was justified in subjecting Ovind to a limited investigative stop for the purpose of "freezing" the situation at the scene of a reported fight. The officer, therefore, had a reasonable and articulable suspicion to stop Ovind's car. We affirm the district court's order denying Ovind's motion to suppress.

I

[¶ 2] In the early morning hours, shortly before 1:45 a.m., on January 17, 1997, Fargo police officers responded to a dispatch reporting a fight at the Taco Bell located at First Avenue and Tenth Street in north Fargo. At the time of the dispatch, the initial responding officer testified he was traveling south on University Drive at approximately Second Avenue and was about three blocks from the location. The officer testified there was little to no traffic in the area, and he arrived at the Taco Bell approximately forty-five seconds to one minute after the dispatch.

[¶ 3] Upon arriving at the Taco Bell, the officer observed only two vehicles in the parking lot. The officer testified he saw one car with a driver and two or three passengers backing out of a parking spot, and an-

other car just exiting the lot onto First Avenue. The officer called for other officers to stop the car exiting the lot and, after activating his patrol car's overhead lights, pulled his vehicle behind the car backing out of the parking spot.

[¶ 4] When the officer exited his patrol car, he observed the driver, later identified as Mark Ovind, and at least two other people in the car. As the officer approached, he heard a male voice and a female voice yelling from the car. The officer testified they were yelling, "Stop that other car, they beat us up." The officer informed the passengers the other car had already been stopped. The officer then proceeded to talk to Ovind. The officer testified that while speaking with Ovind, he detected a strong odor of alcohol and observed other indicia of intoxication. Ovind submitted to field sobriety testing, and officers ultimately arrested Ovind for driving under the influence.

[¶ 5] After a criminal action was filed in the district court, Ovind filed a motion to suppress evidence obtained by the arresting officer and other officers. The district court denied Ovind's motion, and Ovind entered a conditional guilty plea. Ovind appeals from the order denying his motion to suppress, and the only issue on appeal is whether Fargo police officers had reasonable and articulable suspicion to stop Ovind's car.

## II

[¶ 6] " 'We affirm a trial court's decision on a motion to suppress unless, after resolving conflicting evidence in favor of affirmance, we conclude there is insufficient competent evidence to support the decision, or unless we conclude the decision goes against the manifest weight of the evidence.' " *State v. Kenner*, 1997 ND 1, ¶ 7, 559 N.W.2d 538 (quoting *State v. Hawley*, 540 N.W.2d 390, 392 (N.D.1995)). This standard of review accords great deference to the trial court's decision and recognizes the importance of the opportunity to assess the credibility of the witness. *Id.* Here, the trial court did not make specific findings of fact, but the parties did not argue that the relevant facts were in dispute. The ultimate conclusion of whether the facts support a reasonable and articulable suspicion is a fully reviewable question of law. *Id.*

[¶ 7] Although not every police contact with a citizen is a seizure, we will conclude a "seizure" has occurred when an officer has in some way restrained a citizen's liberty by means of physical force or show of authority. *City of Fargo v. Sivertson*, 1997 ND 204, ¶ 8, 571 N.W.2d 137 (summarizing the various levels of police-citizen contacts). An officer's display of authority, including the use of flashing lights, in stopping a moving vehicle results in a seizure. *See, e.g., State v. Langseth*, 492 N.W.2d 298, 301 (N.D. 1992). In the present case, the officer observed Ovind's car backing out of a parking spot. The officer used his patrol car's overhead lights and pulled behind the car to prevent it from leaving. This display of authority in stopping Ovind's car while investigating a reported fight constitutes a seizure for Fourth Amendment purposes. In making the stop, the Fourth Amendment requires " 'some minimal level of objective justification.' " *State v. Robertsdahl*, 512 N.W.2d 427 (N.D.1994) (quoting *INS v. Delgado*, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)).

[¶ 8] In order to legally stop a moving vehicle for an investigation, an officer must have a reasonable and articulable suspicion the motorist has violated or is violating the law. *Kenner*, 1997 ND 1, ¶ 8, 559 N.W.2d 538. This reasonable suspicion standard is less stringent than probable cause, but does require more than a "mere hunch." *See id.* at ¶¶ 8, 10; *State v. Jesfjeld*, 1997 ND 23, ¶ 8, 559 N.W.2d 543. In determining whether an investigative stop is valid, we use an objective standard and look to the totality of the circumstances. *State v. Ova*, 539 N.W.2d 857, 859 (N.D.1995). Reasonable suspicion to justify a stop exists when " 'a reasonable person in the officer's position would be justified by some objective manifestation to suspect potential criminal activity.' " *Id.*

[¶ 9] We do not require an officer to isolate single factors which signal a potential violation of the law; but instead, "officers are to assess the situation as it unfolds and, based upon inferences and deductions drawn from their experience and training, make the determination whether all of the circumstances viewed together create a reasonable suspicion of potential criminal activity." *Id.*

(internal quotations omitted). When assessing reasonableness, we consider inferences and deductions an investigating officer would make which may elude a layperson. *Kenner*, 1997 ND 1, ¶ 8, 559 N.W.2d 538.

[¶ 10] We have previously discussed the following three situations which provided grounds for reasonable suspicion investigative stops: (1) where the officer relied upon a directive or request for action from another officer; (2) where the officer received tips from other police officers or informants, which were then corroborated by the officer's own observations; and (3) where the officer directly observed illegal activity. *Id.* at ¶¶ 11–13 (citations omitted). In the present case, the officer was not acting on the directive of another officer, nor did he directly observe any illegal activity. Here, the officer only received the dispatcher's report of a fight at Taco Bell.

[¶ 11] Ovind argues the dispatcher's report of a fight was neither sufficient in reliability and content nor sufficiently corroborated by the officer's own observations to justify the reasonable suspicion stop of Ovind. As previously stated, a tip lacking in either reliability or content may be corroborated in some other way in order to establish a reasonable suspicion. *See State v. Miller*, 510 N.W.2d 638, 641–43 (N.D.1994); *Wibben v. North Dakota State Highway Comm'r*, 413 N.W.2d 329, 331–32 (N.D.1987). Relying on *Miller*, Ovind contends the stopping officer must make observations of illegal activity in order to corroborate the tip. 510 N.W.2d at 642. In *Miller*, we treated the tip concerning a possible drunk driver as an anonymous tip and explained the corroboration necessary in that type of case:

Typically, our impaired driver cases involve tips that give a description and the location of the vehicle—"easily obtained facts and conditions existing at the time of the tip" and available to the general public. Corroboration of this type of information does not increase the reliability of the tip. Therefore, our cases have required that the officer corroborate the tip by observing some behavior on the part of the driver, either illegal or indicative of impairment,

that alerts the officer to a possible violation.

*Id.* (citations omitted.) While it may make sense to require an observation of illegality or impairment in corroborating tips regarding a specific impaired driver, this type of corroboration may not be practical in the prompt investigation of the scene of a reported recent crime. Some circumstances require a police officer to act quickly in order to preserve the status quo rather than to observe the situation further. *See Appelgate v. Commissioner of Public Safety*, 402 N.W.2d 106, 108 (Minn.1987); *People v. Herron*, 89 Ill.App.3d 1048, 45 Ill.Dec. 641, 645, 412 N.E.2d 1365, 1369 (1980). Here, the officer is not trying to locate an individual driver and confirm a tip of impairment; but instead, the officer is attempting to investigate the scene of a reported fight. The issue in this case deals with the propriety of a limited investigative stop near the scene of a recent crime.

[¶ 12] In dealing with this issue, some courts, including the Minnesota Supreme Court, have recognized certain situations require facilitating police crime scene investigation. *See State v. Moffatt*, 450 N.W.2d 116 (Minn.1990); *Appelgate*, 402 N.W.2d at 108; *see generally* 4 Wayne R. LaFave, *Search and Seizure* § 9.4(g) (3d ed.1996). Where police officers are presented with such a situation, the court in *Appelgate* explains, " 'experience has shown that when a victim or witness cannot name the offender his apprehension is unlikely unless he is rather promptly found in the immediate area.' " 402 N.W.2d at 108 (quoting 3 Wayne R. LaFave, *Search and Seizure* § 9.3(d), at 460 (2d ed.1987)). It is therefore necessary for police officers investigating ·a reported crime scene to have some limited authority to "freeze" the situation. *Id.* Even in circumstances where no one person can be singled out as the probable offender, " 'police [officers] must sometimes be allowed to take some action intermediate to that of arrest and nonseizure activity.' " *Id.* Thus, an investigative stop of a person present at the scene of a recently committed crime may be permissible without violating the Fourth Amendment.[1] Such a stop is especially

---

1. Professor LaFave recognizes and discusses the situation where there may be a lack of sufficient information to make it reasonably likely that a crime has occurred:

deemed permissible where only a limited number of persons are present at the scene of a violent crime. *Wold v. State*, 430 N.W.2d 171, 175 (Minn.1988). We agree with this reasoning.

[¶ 13] Professor LaFave, in his discussion of allowing police to "freeze" a situation, certainly does not condone a "dragnet approach," which results "in the temporary seizure of a large number of persons within the range of [a suspect's] possible flight." 4 LaFave, *supra*, § 9.4(g), at 195. But rather in this context, "selective investigative procedures" are necessary "whereby seizures are made only of those as to whom there exists a 'reasonable possibility'" of being involved in the criminal activity. *Id.* LaFave provides the following six factors which, among others, may be considered in determining what facts and circumstances establish this "reasonable possibility" and would justify stopping a motor vehicle or possible offender:

(1) the particularity of the description of the offender or the vehicle in which he fled; (2) the size of the area in which the offender might be found, as indicated by such facts as the elapsed time since the crime occurred; (3) the number of persons about in that area; (4) the known or probable direction of the offender's flight; (5) observed activity by the particular person stopped; and (6) knowledge or suspicion that the person or vehicle stopped has been involved in other criminality of the type presently under investigation.

*Id.*

[¶ 14] In this case, as in *Appelgate*, there were no descriptions of either the fight participants or the get-away vehicles. There are cases, however, where an investigatory stop is still justified because the number of persons in the location near the scene is so small. *See Moffatt*, 450 N.W.2d 116 (upholding the stop where the only car observed was two blocks away and leaving the scene, and the officer drove to the scene only minutes after a burglary alarm went off at 2:04 a.m.); *Appelgate*, 402 N.W.2d 106 (upholding the stop of a vehicle leaving an apartment complex minutes after a reported burglary at 2:25 a.m. when there was little, if any, traffic); *see also People v. Juarez*, 35 Cal.App.3d 631, 110 Cal.Rptr. 865 (1973) (upholding the stop of a person who was the only pedestrian in the vicinity of a burglary occurring ten minutes earlier); *Herron*, 89 Ill.App.3d 1048, 45 Ill.Dec. 641, 412 N.E.2d 1365 (upholding stop after midnight where there was no suspect description within minutes of a robbery and within one and a half blocks); *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990) (upholding stop where officers arrived at burglary scene within minutes and began grid search, and the car stopped was the only one spotted traveling at the early morning hour); *Commonwealth v. Ellis*, 541 Pa. 285, 662 A.2d 1043 (1995) (upholding the initial stop where vehicle was the only vehicle on the roadway near the burglary scene at an early morning hour).

[¶ 15] In the present case, officers arrived at the Taco Bell parking lot in under a minute from a dispatch early in the morning. The officer testified he observed little to no traffic in the area and only two cars simultaneously attempting to leave the reported site of a fight. The officer's immediate purpose upon entering the lot was to investigate the reported fight. Ovind's car, which the officer ultimately stopped, was one of the two cars present in the lot. The officer also testified that in his experience people involved in a fight tend to flee quickly afterward, especially if they find out the police have been called.

[¶ 16] Furthermore, during the limited investigatory stop of Ovind, the initial observations made by the officer upon approaching Ovind's car increased the degree of objective suspicion that the car's occupants had indeed been involved in a fight. Passengers in Ovind's car actually requested the officer's help in apprehending other fight participants in another car. *See, e.g., Moffatt*, 450 N.W.2d at 119 (observing car's occupants were soaked with sweat and gave a lame

---

But, though it may not be more probable than not that a crime has occurred in such a situation, given the possibility that the call is a prank or is unrelated to criminal activity, it should be permissible to stop those fleeing the area while more specific information is obtained. *Bell v. United States*, 280 F.2d 717 (D.C.Cir.1960).

4 Wayne R. LaFave, *Search and Seizure* § 9.4(g), at 193 n. 262 (3d ed.1996).

reason for being in the area increased officer's objective suspicion that the occupants had been involved in a burglary).

[¶ 17] Based upon these facts, it was reasonable for the officer to "freeze" the situation for further investigation and subject Ovind to a limited investigative stop at the scene of the reported fight. The officer's suspicions upon entering the lot may have been rendered less reasonable had there been a longer period of time before police arrived at the reported fight scene, or additional cars in the parking lot, or more traffic in the surrounding area, or even if the report had come at a different time of day. However, under the totality of circumstances, we conclude as a matter of law the officer had a particularized and objective basis for suspecting Ovind as having been involved in the reported fight; therefore, the officer was justified in the limited investigative stop of Ovind.

### III

[¶ 18] Because we conclude the officer had a reasonable and articulable suspicion justifying the stop of Ovind's car, we affirm the district court's order denying Ovind's motion to suppress evidence obtained from the stop.

[¶ 19] VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.

