1999 ND 241

**CITY OF MINOT, Plaintiff
and Appellant,**

v.

**Timothy JOHNSON, Defendant
and Appellee.**

No. 990196.

Supreme Court of North Dakota.

Dec. 22, 1999.

486

Rozanna C. Larson, Assistant State's Attorney, Minot, N.D., for plaintiff and appellant.

Thomas K. Schoppert of Schoppert Law Firm, Minot, N.D., for defendant and appellee.

NEUMANN, Justice.

[¶ 1] The City of Minot appeals from the trial court's suppression order. We affirm.

[¶ 2] On March 27, 1999, Senior Patrolman George Saltsman was performing security checks around Cathy's Cafe and Nola's Lounge in Minot, North Dakota. Patrolman Saltsman knew Nola's Lounge, Cathy's Cafe, and the nearby Moose Club had been burglarized in the past. The last burglary report at Nola's Lounge was on December 23, 1998, three months earlier.

[¶ 3] At approximately 4:13 a.m., Patrolman Saltsman observed Timothy Johnson turn off Burdick Expressway, enter the parking lot at Nola's Lounge, drive into a sparsely lit area behind the lounge, and exit the parking lot without stopping. Patrolman Saltsman stopped Johnson approximately three blocks later to ask for identification. Johnson was subsequently charged with DUI.

[¶ 4] On May 21, 1999, Johnson moved to suppress evidence gained from the investigatory stop. On June 3, 1999, the trial court granted the motion, concluding the "officer did not articulate any observation of any illegal activity." The City moved for reconsideration. The trial court denied the City's motion. The City appeals.

[¶ 5] An appeal of an order granting the suppression of evidence is allowed under N.D.C.C. § 29–28–07(5). Our standard of review is well documented in North Dakota case law.

" 'We affirm a trial court's decision on a motion to suppress unless, after resolving conflicting evidence in favor of affirmance, we conclude there is insufficient competent evidence to support the decision, or unless we conclude the decision goes against the manifest weight of the evidence.' " *State v. Kenner*, 1997 ND 1, ¶ 7, 559 N.W.2d 538 (quoting *State v. Hawley*, 540 N.W.2d 390, 392 (N.D.1995)). This standard of review accords great deference to the trial court's decision and recognizes the importance of the opportunity to assess the credibility of the witness. *Id.* The ultimate conclusion of whether the facts

support a reasonable and articulable suspicion is a fully reviewable question of law. *Id.*

\* \* \* \*

In order to legally stop a moving vehicle for an investigation, an officer must have a reasonable and articulable suspicion the motorist has violated or is violating the law. *Kenner*, 1997 ND 1, ¶ 8, 559 N.W.2d 538. This reasonable suspicion standard is less stringent than probable cause, but does require more than a "mere hunch." *See id.* at ¶¶ 8, 10; *State v. Jesfjeld*, 1997 ND 23, ¶ 8, 559 N.W.2d 543. In determining whether an investigative stop is valid, we use an objective standard and look to the totality of the circumstances. *State v. Ova*, 539 N.W.2d 857, 859 (N.D.1995). Reasonable suspicion to justify a stop exists when "a reasonable person in the officer's position would be justified by some objective manifestation to suspect potential criminal activity." *Id.*

We do not require an officer to isolate single factors which signal a potential violation of the law; but instead, "officers are to assess the situation as it unfolds and, based upon inferences and deductions drawn from their experience and training, make the determination whether all of the circumstances viewed together create a reasonable suspicion of potential criminal activity." *Id.* When assessing reasonableness, we consider inferences and deductions an investigating officer would make which may elude a layperson. *Kenner*, 1997 ND 1, ¶ 8, 559 N.W.2d 538.

*City of Fargo v. Ovind*, 1998 ND 69, ¶¶ 6, 8–9, 575 N.W.2d 901.

[¶ 6] The City argues the trial court incorrectly applied a probable cause standard instead of a reasonable and articulable suspicion standard. We agree. The trial court applied a probable cause standard by concluding the evidence gained from the investigatory stop should be suppressed because Patrolman Saltsman "did not articulate any observation of any illegal activity." Observation of an illegal activity constitutes probable cause to arrest, a higher standard than a reasonable suspicion. *Kahl v. Director, N.D. Dept. of Transp.*, 1997 ND 147, ¶ 14, 567 N.W.2d 197.[1]

[¶ 7] Applying the correct standard, we must determine, as a matter of law, whether Patrolman Saltsman had a reasonable and articulable suspicion Johnson violated, was violating, or was about to violate the law. *Kenner*, at ¶ 8. "The question is whether a reasonable person in the officer's position would be justified by some objective manifestation to suspect the defendant was, or was about to be, engaged in unlawful activity." *Id.* at ¶ 8.

[¶ 8] The City argues the prior burglary reports in the Nola's Lounge area justified Patrolman Saltsman to suspect Johnson was, or was about to be, engaged in illegal activity. An area's reputation for criminal activity is an articulable fact on which a police officer may legitimately rely. *United States v. Rickus*, 737 F.2d 360, 365 (3rd Cir.1984) (considering a residential area recently victimized by as many as twelve unsolved nighttime burglaries). However, an area's reputation for criminal activity cannot solely support a finding of reasonable suspicion. *Brown v. Texas*, 443 U.S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489, 493–94 (1988) (Wright, J., dissenting) (arguing

---

1. The trial court may have based this conclusion on an erroneous interpretation of the *Ovind* case. In *Ovind*, we listed three situations providing grounds for reasonable suspicion investigative stops:

    (1) where the officer relied upon a directive or request for action from another officer; (2) where the officer received tips from other police officers or informants, which were then corroborated by the officer's own observations; and (3) where the officer directly observed illegal activity.

    *City of Fargo v. Ovind*, at ¶ 10.

    However, we did not limit the grounds providing reasonable suspicion to those three scenarios.

courts would create a "high crime area" exception to the protections extended by the Fourth and Fourteenth Amendments).

[¶ 9] In *Rickus*, the Third Circuit Court of Appeals relied on more than the area's reputation for criminal activity to find the officer possessed a reasonable suspicion the car or its occupants were involved, or about to become involved, in criminal activity. 737 F.2d at 365. The *Rickus* officer observed the defendants driving in the area and returning thirty minutes later, "traveling through a closed business district at 3:30 in the morning at a speed 15–20 miles per hour below the posted speed limit." *Id.* at 362, 365. The defendants "then turned into a residential area that [the officer] knew had recently been victimized by a spate of burglaries, and continued their slow and apparently aimless course for several minutes before being stopped." *Id.* at 365. The area's reputation for criminal activity and the officer's observations, together, were sufficient to raise a reasonable and articulable suspicion. *Id.* at 366.

[¶ 10] We have also required more than an officer's awareness of past burglaries in an area to find a reasonable and articulable suspicion the defendant was, or was about to be, engaged in unlawful activity. *State v. Robertsdahl*, 512 N.W.2d 427, 428 (N.D.1994). In *Robertsdahl*, the officer observed an unknown vehicle leave a liquor store area fifty minutes after closing time and return to the liquor store after making four corners. *Id.* at 428. We reasoned these facts and the officer's awareness of several past burglaries in the area amounted "to no more than a 'vague hunch' of illegal activity ... [and] was insufficient to raise a reasonable and articulable suspicion." *Id.*

[¶ 11] Here, the facts are more analogous to *Robertsdahl* than *Rickus*. At approximately 4:13 a.m., Patrolman Saltsman saw an unknown vehicle enter the Nola's Lounge parking lot. The vehicle did not slow down or stop in front of or behind the lounge and returned to the public roads. Patrolman Saltsman stopped the vehicle approximately three blocks later without noticing any unusual driving. These facts and Patrolman Saltsman's awareness of past burglaries in the area amounted to no more than a vague hunch of illegal activity and are legally insufficient to suspect Johnson was, or was about to be, engaged in unlawful activity. *See id.*

[¶ 12] We conclude, as a matter of law, the information known to Patrolman Saltsman at the time of the investigative stop was insufficient to raise a reasonable and articulable suspicion. We affirm the trial court's suppression order.

[¶ 13] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, CAROL RONNING KAPSNER, JJ., concur.

MARING, Justice, concurring and dissenting.

[¶ 14] I concur with that part of the majority opinion holding the trial judge erred in applying the stricter probable cause standard, rather than the more minimal reasonable suspicion standard. I disagree, however, with the majority opinion's conclusion that, as a matter of law, the events witnessed by Patrolman Saltsman do not give rise to a reasonable and articulable suspicion, justifying an investigatory stop. The majority correctly states that,

> officers are to assess the situation as it unfolds and, based upon inferences and deductions drawn from their experience and training, make the determination whether all of the circumstances viewed together create a reasonable suspicion of potential criminal activity.

*Ova*, 539 N.W.2d at 859. I conclude, based on that standard and given the totality of the circumstances of this case, Patrolman Saltsman had a reasonable and articulable suspicion to stop Johnson's vehicle. Therefore, I respectfully dissent.

[¶ 15] Though one's mere presence in a high crime area does not justify a stop, the

reputation of an area for criminal activity is an articulable fact upon which a police officer may rely. *Rickus*, 737 F.2d at 365. The majority acknowledges that principle, but concludes this case is similar to *Robertsdahl*, in which a police officer made an investigatory stop because he was unfamiliar with the defendant's vehicle and was suspicious because he knew there had been burglaries in that county and in surrounding counties. 512 N.W.2d at 427. I believe the facts presented in this case are unlike those in *Robertsdahl*. Here, the defendant's car drove around a business which was closed for the evening and into a dimly lighted area directly behind the building. The patrolman knew this establishment had been burglarized recently and that the defendant's car did not belong to its owners. The patrolman knew that several other nearby businesses had also been burglarized in the past. The patrolman further knew these businesses had only minimal security systems. In fact, at the time the patrolman observed the defendant drive behind the building, he was doing routine building checks in order to prevent and detect burglaries to these businesses. Thus, the area in which these events occurred was not merely a "high crime area" in general. Rather, the defendant, after business hours, drove around and into a dimly lit area directly behind a victimized establishment, which the officer knew to have an inadequate security system. While the occurrence of burglaries at unspecified locations throughout a county did not justify the stop in *Robertsdahl*, I believe the officer's knowledge, in this case, of the history of and susceptibility to burglaries of a particular establishment, coupled with other facts, gives rise to a reasonable and articulable suspicion.

[¶ 16] Among the "other facts" which, along with an officer's knowledge of an area's reputation for crime, may give rise to a reasonable suspicion is the time of night at which the events take place. The California Supreme Court recognized in *People v. Souza*, that "[t]he time of night is another pertinent factor in assessing the validity of a detention." 9 Cal.4th 224, 36 Cal.Rptr.2d 569, 885 P.2d 982, 992 (1994). Other state supreme courts have reached similar conclusions. In *Maine v. Dean*, the Maine Supreme Court held an officer had the requisite reasonable and articulable suspicion to stop a driver, whose driving was "unremarkable," leaving an unoccupied building site at 11:00 p.m. 645 A.2d 634, 635–36 (Me.1994). The Maine court noted the two facts yielding a reasonable suspicion were: "(1) Dean's presence in an area of recent crime reports; and (2) the apparent absence of any reason to be in an uninhabited area at night." *Id.* at 636. In reaching this conclusion, the court relied on two other state supreme court cases with similar fact patterns. In *People v. Ellis*, the Illinois Supreme Court held an officer had reasonable suspicion to stop two men walking across a shopping center parking lot, in an area of recent burglaries, at 1:25 a.m. 113 Ill.App.3d 314, 68 Ill.Dec. 885, 446 N.E.2d 1282, 1284–85 (1983). A decade earlier, in a case very similar to the one before us, the Missouri Supreme Court held in *Missouri v. Stark*, that an officer was justified in stopping a vehicle which, at 1:00 a.m., entered and quickly left an apartment complex known to have been the scene of numerous crimes. 502 S.W.2d 261, 263 (Mo.1973).

[¶ 17] Our Court has also recognized the time of night during which events occur may be a relevant factor in determining the reasonableness of an officer's actions when making an investigatory stop. In *Ovind*, a police officer responded to a report of a fight in a fast food restaurant parking lot a little before 1:45 a.m. 1998 ND 69, ¶ 2, 575 N.W.2d 901. Under the circumstances presented in that case, we held it was reasonable for an officer to "freeze" a situation where he suspected a crime may have been committed and conduct a limited investigatory stop. *Id.* at ¶ 17. We stated, however, that the officer's suspicions might have been less reasonable had the events occurred at a different time of day. *Id.*

[¶ 18] The events giving rise to this appeal occurred at approximately 4:13 a.m. in a business and residential area of Minot, North Dakota. Activities that are unremarkable during daylight hours are more likely to arouse suspicion when conducted under cover of darkness. The time of night at which Patrolman Saltsman saw the defendant drive into a dimly lit area behind a closed business and exit the parking lot is another articulable fact, and part of the totality of the circumstances, upon which reasonable suspicion may be based.

[¶ 19] Our duty is to view the events leading to the stop through Patrolman Saltsman's eyes, granting him the reasonable inferences drawn from training and experience. Given that standard and the totality of the circumstances presented by this case, I conclude reasonable and articulable suspicion existed to justify the investigatory stop. I would reverse the trial court's order suppressing evidence from the stop and remand for further proceedings.

[¶ 20] Mary Muehlen Maring