2003 ND 89

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Richard CORUM, Defendant and Appellant.**

No. 20020230.

Supreme Court of North Dakota.

June 5, 2003.

Brandi Sasse Russell, Courthouse, Bismarck, N.D., for plaintiff and appellee.

Paul H. Myerchin, Bormann & Myerchin, LLP, Bismarck, N.D., for defendant and appellant.

MARING, Justice.

[¶ 1] Richard Corum appeals from an order denying his motion to suppress evidence and from a criminal judgment finding him guilty of possession of drug paraphernalia. We affirm, concluding the trial court did not err in refusing to suppress evidence obtained in a search of Corum's home.

I

[¶ 2] At approximately 4:00 a.m. on October 30, 2001, McLean County Deputy Sheriff Richard Benn was on patrol near Wilton, North Dakota. As he crested a hill, Deputy Benn saw a vehicle with its lights turned off parked on the side of the road. The vehicle was near an anhydrous ammonia storage yard which had been the subject of several prior thefts. There were no other businesses or homes in the area. Deputy Benn noticed a flash of light, which he believed to be from a flashlight, in the ditch by the passenger side of the vehicle. According to Deputy Benn, the flashlight appeared to be outside the vehicle. Deputy Benn then noticed a yellow flash of light from the vehicle's right front turn signal, as if someone had bumped the turn signal lever while climbing into the vehicle. The headlights of the vehicle came on and it pulled onto the roadway. As Deputy Benn passed the vehicle, he saw two males in the front seat.

[¶ 3] Deputy Benn turned around and stopped the vehicle by activating his overhead lights. Upon approaching, he observed two tanks in the back of the vehicle. Both tanks were frosted over and the valves were a bluish color, indicating they had been filled with anhydrous ammonia. Deputy Benn obtained consent to search the vehicle and confirmed that the tanks contained anhydrous ammonia.

[¶ 4] Deputy Benn placed the driver, Joel Kraft, and the passenger, Corum, under arrest for theft of the anhydrous ammonia. While Corum was being booked into jail, an inventory search of his wallet produced receipts showing recent multiple purchases of pseudoephedrine and batteries. Anhydrous ammonia, pseudoephedrine, and batteries are all used to manufacture methamphetamine.

[¶ 5] That afternoon, Agent Todd DeBoer of the North Dakota Bureau of Criminal Investigation applied for a warrant to search Corum's home in Bismarck. Agent DeBoer testified about Corum's participation in the anhydrous ammonia theft and about the receipts found in Corum's wallet for recent purchases of pseudoephedrine and batteries. Agent DeBoer also testified he had previously received information from an informant, Amanda Frey, that Corum was manufacturing methamphetamine and that he kept ingredients and finished product at his home in Bismarck. The magistrate found probable cause and issued the search warrant. The resulting search of Corum's home produced drug paraphernalia and other contraband.

[¶ 6] Corum was charged with possession of drug paraphernalia and manufacturing methamphetamine. Corum's motion to suppress all evidence from the search of his home was denied by the district court. He subsequently entered a conditional plea of guilty to possession of drug paraphernalia, reserving his right to appeal, and the second count for manufacturing methamphetamine was dismissed. Corum has appealed from the order denying his motion to suppress and from the criminal judgment.

II

[¶ 7] Corum challenges issuance of the search warrant and contends all evidence

from the search of his home should have been suppressed.

## A

[¶ 8] Corum challenges the validity of the traffic stop which produced evidence of his involvement in the theft of anhydrous ammonia and his purchases of pseudoephedrine and batteries. Corum contends that, because the vehicle stop was illegal, the warrant cannot be based upon evidence derived from the vehicle stop.

[¶ 9] Illegally obtained evidence cannot be the basis for a magistrate's finding of probable cause to support a search warrant. *See Alderman v. United States*, 394 U.S. 165, 177, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *State v. Winkler*, 1997 ND 144, ¶ 12, 567 N.W.2d 330; *State v. Runck*, 534 N.W.2d 829, 833–34 (N.D.1995); *State v. Kunkel*, 455 N.W.2d 208, 211–12 (N.D. 1990). Thus, because the evidence obtained from the vehicle stop is crucial to the validity of the warrant, the warrant would not be supported by probable cause if the vehicle stop was unlawful.

[¶ 10] To stop a moving vehicle for investigative purposes, an officer must have a reasonable and articulable suspicion that a law has been or is being violated. *City of Devils Lake v. Lawrence*, 2002 ND 31, ¶ 8, 639 N.W.2d 466; *City of West Fargo v. Ross*, 2001 ND 163, ¶ 7, 634 N.W.2d 527. The reasonable suspicion standard is less stringent than probable cause. *City of Minot v. Johnson*, 1999 ND 241, ¶ 5, 603 N.W.2d 485; *City of Fargo v. Ovind*, 1998 ND 69, ¶ 8, 575 N.W.2d 901. Although the concept of reasonable suspicion is not readily reduced to a neat set of legal rules, it does require more than a "mere hunch." *Lawrence*, at ¶ 8; *Ross*, at ¶ 7. In determining whether an investigative stop is valid, we employ an objective standard and look to the totality of the circumstances. *Lawrence*, at ¶ 8; *Ovind*,

at ¶ 8. Reasonable suspicion for a stop exists when a reasonable person in the officer's position would be justified by some objective manifestation to believe the defendant was, or was about to be, engaged in unlawful activity. *State v. Boyd*, 2002 ND 203, ¶ 14, 654 N.W.2d 392; *Lawrence*, at ¶ 8.

[¶ 11] We do not require an officer to isolate a single factor which, standing alone, signals a potential violation of the law. *Lawrence*, 2002 ND 31, ¶ 8, 639 N.W.2d 466; *Ross*, 2001 ND 163, ¶ 8, 634 N.W.2d 527. Rather, "officers are to assess the situation as it unfolds and, based upon inferences and deductions drawn from their experience and training, make the determination whether all of the circumstances viewed together create a reasonable suspicion of potential criminal activity." *Lawrence*, at ¶ 8 (quoting *Ovind*, 1998 ND 69, ¶ 9, 575 N.W.2d 901). When assessing reasonableness, we examine all of the information known to the officer at the time of the stop, and we consider inferences and deductions an investigating officer would make which may elude a layperson. *Boyd*, 2002 ND 203, ¶ 15, 654 N.W.2d 392.

[¶ 12] Corum argues Deputy Benn's stop of the vehicle was based solely upon the fact there had been prior thefts of anhydrous ammonia from the storage yard. Relying upon *Johnson*, 1999 ND 241, 603 N.W.2d 485, Corum contends an area's reputation for criminal activity cannot solely support a finding of reasonable suspicion, and Deputy Benn was acting upon a mere hunch when he stopped the vehicle.

[¶ 13] In *Johnson*, an officer was patrolling an area where there had been prior burglaries. At 4:13 a.m., the officer saw a vehicle drive into the parking lot of a bar which had been burglarized several

months earlier. The vehicle passed through a sparsely lit area behind the bar and then exited the parking lot without stopping. The officer then stopped the vehicle. We affirmed an order suppressing evidence resulting from the stop, concluding the information available to the officer at the time of the stop was insufficient to raise a reasonable suspicion of criminal activity. We held that, although an "area's reputation for criminal activity is an articulable fact on which a police officer may legitimately rely," it "cannot *solely* support a finding of reasonable suspicion." *Johnson*, 1999 ND 241, ¶ 8, 603 N.W.2d 485 (emphasis added).

[¶ 14] This case is clearly distinguishable from *Johnson*. In *Johnson*, the prior burglaries in the area and the early morning hour were the *only* facts giving rise to a suspicion of unlawful activity. If the stop in *Johnson* were upheld, officers could essentially stop any vehicle traveling at a suspicious hour in the vicinity of prior criminal activities.

[¶ 15] In contrast, there are additional crucial factors in this case which, when viewed in their totality through the eyes of a trained law enforcement officer, are sufficient to give rise to a reasonable suspicion of unlawful activity. The vehicle in this case was not merely passing through an area where there had been prior crimes. Rather, the vehicle was stopped on a rural highway next to an anhydrous ammonia storage yard where there had been several earlier thefts. The deputies of the McLean County Sheriff's Department had been specifically instructed to check the tanks because of the prior thefts. Unlike the bar involved in *Johnson*, which was located in the city with other businesses nearby, the anhydrous ammonia storage yard was located in a rural area with no other businesses or residences nearby.

[¶ 16] Most significantly, Deputy Benn observed a flashlight shining outside the vehicle. It is one thing for a vehicle to drive through a bar's parking lot at 4:00 a.m. It is quite another for a vehicle to be stopped on a highway at 4:00 a.m., with the occupants outside the vehicle, in a rural area where a previously burglarized anhydrous ammonia storage yard is the only nearby facility of any kind. Under these circumstances, we conclude there was a reasonable and articulable suspicion of unlawful activity justifying an investigative stop of the vehicle.

[¶ 17] Although not cited by Corum, we note our decision does not conflict with the results in either *State v. Robertsdahl*, 512 N.W.2d 427 (N.D.1994), or *State v. Sarhegyi*, 492 N.W.2d 284 (N.D.1992). *Robertsdahl* is similar to *Johnson*. The officer saw a vehicle "leave the area" of a bar in a small town at approximately 1:50 a.m., followed the vehicle as it drove a few blocks and "headed back towards the bar," and stopped the vehicle when it headed out of town. *Robertsdahl*, at 427. This Court concluded the officer's unfamiliarity with the vehicle, his knowledge of past burglaries in the county, and the vehicle's location in the vicinity of some businesses after hours amounted to no more than a vague hunch of criminal activity and did not constitute a reasonable suspicion of unlawful activity. *Id.* at 428. Again, the facts in this case are distinguishable and provide several additional factors which, viewed in their totality, created a reasonable suspicion of unlawful activity.

[¶ 18] In *Sarhegyi*, an officer on patrol in Fargo noticed a vehicle parked in the lot of a farm implement dealership. When the officer drove into the lot, the vehicle's headlights came on and it began to pull away. The officer then stopped the vehicle. This Court concluded that neither the fact the vehicle was parked in a darkened

parking lot late at night, nor the fact it began to leave when the officer approached, was sufficient to stop the vehicle. The Court noted that mere avoidance of a police car, standing alone, is insufficient to support a finding of reasonable suspicion. *Sarhegyi*, 492 N.W.2d at 287. The Court suggested, however, that it could be a valid "indicia of suspicion" when combined with other observations of the officer. *Id.* Similarly, the Court noted a car parked in a darkened parking lot late at night could, in combination with other specific, objective facts, support a finding of reasonable suspicion, but was insufficient standing alone. *Id.* The Court concluded that these two facts alone did not constitute reasonable suspicion.

[¶ 19] Again, there are significant additional factors which distinguish this case from *Sarhegyi*. There was no evidence in *Sarhegyi* that the area or the specific business had been the subject of prior burglaries or other unlawful activity. Nor was there evidence that the occupants of the vehicle were outside the vehicle. Rather, the *only* factor present in *Sarhegyi* was a vehicle, stopped in a parking lot late at night, which began to leave when a patrol car pulled into the lot.

[¶ 20] Under the circumstances of this case, viewed in their totality and considering the deductions and inferences a trained officer would make, we conclude there was a reasonable suspicion to stop the vehicle.

### B

[¶ 21] Corum argues there was insufficient evidence in support of the warrant to establish probable cause.

[¶ 22] We summarized the standards governing issuance of a search warrant and review of the validity of the warrant on appeal in *State v. Guthmiller*, 2002 ND 116, ¶¶ 10–11, 646 N.W.2d 724:

"Probable cause is required for a search warrant under the Fourth Amendment to the United States Constitution and Article I, Section 8 of our state constitution." *State v. Thieling*, 2000 ND 106, ¶ 7, 611 N.W.2d 861. "Probable cause to search exists 'if the facts and circumstances relied on by the magistrate would warrant a person of reasonable caution to believe the contraband or evidence sought probably will be found in the place to be searched.'" *Id.* (quoting *State v. Johnson*, 531 N.W.2d 275, 278 (N.D.1995)).

Probable cause to search does not require the same standard of proof necessary to establish guilt at trial; rather, probable cause to search exists if it is established that certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an identifiable place.

*State v. Ringquist*, 433 N.W.2d 207, 212 (N.D.1988). "Although each piece of information may not alone be sufficient to establish probable cause and some of the information may have an innocent explanation, 'probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observed as trained officers.'" *Thieling*, at ¶ 7 (quoting *State v. Damron*, 1998 ND 71, ¶ 7, 575 N.W.2d 912 (citations omitted)). "The task of the issuing magistrate is to make a practical, commonsense decision whether, given all the information considered together, there is a fair probability contraband or evidence of a crime will be found in a particular place." *State v. Rydberg*, 519 N.W.2d 306, 308 (N.D.1994).

The trial court reviewing the validity of a search warrant decides whether the information before the magistrate estab-

lished probable cause to search. *Id.* "Whether probable cause exists to issue a search warrant is a question of law." *Thieling,* 2000 ND 106, ¶ 8, 611 N.W.2d 861. On appeal, we review the sufficiency of information before the magistrate independent of the trial court's decision and use the totality-of-the-circumstances test. *Rydberg,* at 308.

[¶ 23] We generally defer to a magistrate's determination of probable cause, and will not disturb the magistrate's conclusion that probable cause exists if there is a substantial basis for that conclusion. *State v. Jones,* 2002 ND 193, ¶ 14, 653 N.W.2d 668; *State v. Damron,* 1998 ND 71, ¶ 6, 575 N.W.2d 912. When reviewing the magistrate's determination of probable cause, a doubtful or marginal case should be resolved in favor of the magistrate's determination. *Jones,* at ¶ 14; *Damron,* at ¶ 6. We will resolve doubt about the sufficiency of the evidence in support of a search warrant in favor of the search. *Guthmiller,* 2002 ND 116, ¶ 11, 646 N.W.2d 724.

[¶ 24] In support of the application for the warrant, Agent DeBoer testified that Corum had been involved in the theft of anhydrous ammonia from a storage yard near Wilton at 4:00 a.m. that morning; that two seven-pound air tanks containing anhydrous ammonia were found in the vehicle in which Corum was a passenger; that, during an inventory search of Corum's wallet, officers found two receipts for multiple purchases of pseudoephedrine and batteries; and that one of those purchases had occurred on October 29, one day before the hearing on the application for the warrant. Agent DeBoer further testified that anhydrous ammonia, pseudoephedrine, and batteries are commonly used in manufacturing methamphetamine, and that, in his training and experience, it is common for people involved in manufac-turing methamphetamine to keep these types of materials and equipment on hand.

[¶ 25] Agent DeBoer also testified that an informant named Amanda Frey had earlier provided information that Corum was manufacturing methamphetamine. According to Frey, Corum "cooked" the methamphetamine in the country but kept the ingredients and finished product at his home in Bismarck. Frey had provided an address for Corum's home that matched the Bismarck address Corum gave when he was arrested for the theft of anhydrous ammonia. Agent DeBoer testified Frey had given reliable information in the past which had resulted in successful applications for search warrants and arrests of other individuals.

[¶ 26] Agent DeBoer also testified Corum had a criminal record with prior drug-related charges. A suspect's criminal history may be used to support a determination of probable cause when used in connection with other evidence. *State v. Duchene,* 2001 ND 66, ¶ 16, 624 N.W.2d 668; *State v. Hage,* 1997 ND 175, ¶ 23, 568 N.W.2d 741.

[¶ 27] Probable cause exists when "there is a fair probability contraband or evidence of a crime will be found in a particular place." *Guthmiller,* 2002 ND 116, ¶ 10, 646 N.W.2d 724 (quoting *Rydberg,* 519 N.W.2d at 308 (N.D.1994)). Evidence was presented to the magistrate indicating Corum had been involved in the theft of anhydrous ammonia earlier that day, and had purchased other supplies for manufacturing methamphetamine the day before. There was also evidence indicating Corum kept ingredients for manufacturing methamphetamine and the finished product at his home in Bismarck. Finally, there was evidence Corum had previous drug-related criminal charges. Viewed in light of the totality of the circumstances,

the evidence presented to the magistrate would warrant a person of reasonable caution to believe there was a fair probability contraband or evidence of a crime would be found in Corum's home.

## C

[¶ 28] Corum argues the evidence obtained with the search warrant should have been suppressed because, when applying for the warrant, Agent DeBoer failed to tell the magistrate that Amanda Frey had prior drug convictions and had pending criminal drug charges against her when she provided information about Corum to DeBoer. Corum contends that if this information had been provided to the magistrate there would not have been probable cause to issue the warrant.

[¶ 29] In *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the United States Supreme Court addressed the applicable standards when the defendant alleges that false or misleading statements have been made in the application for a search warrant:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if

probable cause was lacking on the face of the affidavit.

[¶ 30] The *Franks* standard also applies to statements that are misleading by omission. *State v. Holzer*, 2003 ND 19, ¶ 7, 656 N.W.2d 686; *State v. Rangeloff*, 1998 ND 135, ¶ 9, 580 N.W.2d 593. In order to trigger application of *Franks*, however, the omission must be such that, had the omitted information been provided to the magistrate, it would have defeated probable cause. *Rangeloff*, at ¶ 9; 2 Wayne R. LaFave, *Search and Seizure* § 4.4(c) (3d ed.1996). The defendant is required to make a two-part showing:

> In order to succeed on a *Franks* challenge based on an allegation of omitted information, the defendant must show: "(1) that the police omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading, ... and (2) that the affidavit if supplemented by the omitted information would not have been sufficient to support a finding of probable cause." *State v. Winkler*, 552 N.W.2d 347, 352 n. 1 (N.D.1996) (quoting *United States v. Lucht*, 18 F.3d 541, 546 (8th Cir.1994)).

In its order denying Holzer's Motion to Suppress, the trial court did not make a finding on whether the officer recklessly or intentionally omitted the information, but did find that if the officer's testimony was supplemented with the omitted information, the informant was still reliable. The trial court concluded that none of the "issues raised by the Defendant would have made a significant enough difference to the Court in issuing the search warrant that they are grounds for suppression of the evidence, ..." We agree with the trial court's conclusion.

■■■■■■■■■■■■■■■■

Under the second part of the test, the court must determine whether the omissions, if added into the warrant application, would have defeated probable cause. This means Holzer would have to show that if the police officer's testimony would have included the alleged omissions, probable cause would not have existed for the judge to issue the search warrant.

*Holzer*, at ¶¶ 7–9 (citations omitted).

■■■■ [¶ 31] In *Holzer*, we concluded omission of the fact that an informant had provided information about the defendant in exchange for his own release did not defeat probable cause to issue the search warrant. We noted:

"The omission of the fact that the informant is charged with a crime and is cooperating to gain leniency is not a misrepresentation and is not 'clearly critical' to the issuing judge."

*Holzer*, 2003 ND 19, ¶ 13, 656 N.W.2d 686 (quoting *United States v. Gladney*, 48 F.3d 309, 315 (8th Cir.1995)). Failure to inform a magistrate about an informant's criminal history, that there are pending criminal charges against the informant, or that the informant has been promised leniency for the information is not fatal to the validity of a warrant. *See Gladney*, at 315; *United States v. Travis*, 993 F.2d 1316, 1320 (8th Cir.1993); *United States v. Wold*, 979 F.2d 632, 634–35 (8th Cir.1992).

[¶ 32] In denying the motion to suppress, the trial court concluded that probable cause existed even if the information about Frey's criminal history and pending charges had been provided to the magistrate. Agent DeBoer testified at the suppression hearing that Frey had come forward and provided the information on her own volition, without request from law enforcement. When applying for the search warrant, Agent DeBoer testified Frey had given reliable information in the past which had resulted in successful applications for search warrants and arrests of other individuals. In addition, Frey's information about Corum's home address was corroborated by other evidence in support of the warrant. Under these circumstances, we conclude the trial court did not err in determining that probable cause existed for issuance of the warrant even if the omitted ·information had been included.[1]

### III

[¶ 33] We have considered the remaining arguments raised by Corum and conclude they are without merit. The order denying the motion to suppress and the criminal judgment are affirmed.

[¶ 34] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, CAROL RONNING KAPSNER, JJ., and JAMES M. BEKKEN, D.J., concur.

[¶ 35] The Honorable JAMES M. BEKKEN, D.J., sitting in place of SANDSTROM, J., disqualified.

---

1. We caution prosecutors and law enforcement officers that the "better practice" when applying for a search warrant is to supply all obviously relevant information, particularly the criminal history and pending charges of an informant, to the magistrate in the application. *See Gladney*, 48 F.3d at 315. Such a practice may often obviate the necessity of appellate judicial review of search warrants.